Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 24, 2019

**2019 CO 63**

**No. 19SA30, *People v. Brown*—Search & Seizure—Reasonable Suspicion—
Investigatory Stop.**

In this original proceeding pursuant to C.A.R. 4.1 and section 16-12-102(2), C.R.S.
(2018), this court reviews the district court's order suppressing evidence arising out of an
investigatory stop which lead to drug charges being brought against the defendant.

The supreme court considers whether, under the totality of the circumstances, the
police officer had reasonable suspicion to stop the defendant to determine his identity.
Because the officer received a report of a domestic disturbance, saw the defendant
walking away from the location of the reported disturbance immediately thereafter, and
saw no one else in the area, we hold that the officer had reasonable suspicion to stop the
defendant to determine his identity. The supreme court therefore reverses the district
court's suppression order and remands the case for further proceedings consistent with
this opinion.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

---

## 2019 CO 63

---

**Supreme Court Case No. 19SA30**
*Interlocutory Appeal from the District Court*
El Paso County District Court Case No. 18CR4295
Honorable Jann P. DuBois, Judge

---

**Plaintiff-Appellant:**

The People of the State of Colorado,

v.

**Defendant-Appellee:**

Alexis Antonio Brown.

---

**Order Reversed**
*en banc*
June 24, 2019

---

**Attorneys for Plaintiff-Appellant:**
Daniel H. May, District Attorney, Fourth Judicial District
Austin Lux, Deputy District Attorney
Doyle Baker, Senior Deputy District Attorney
   *Colorado Springs, Colorado*

**Attorneys for Defendant-Appellee:**
Megan A. Ring, Public Defender
Jeremy Wooten, Deputy Public Defender
   *Colorado Springs, Colorado*

**JUSTICE BOATRIGHT** delivered the Opinion of the Court.

¶1 While on patrol, a police officer heard a man and woman arguing behind the gate of a storage facility. When the officer called dispatch to report the disturbance, he was informed that a call had just come in regarding a possible domestic disturbance involving a man named Alexis Brown at that same location. Seconds later, the yelling stopped, and the officer saw a man walking away from the storage facility; the man was the only visible person in the area. The officer stopped the man and asked his name. When the man gave his name as Alexis Brown, the officer realized that it matched the name given for the possible domestic disturbance. The officer then ran a records check on Brown's name and found that there was an active warrant for his arrest, at which point Brown was taken into custody; a subsequent search revealed methamphetamine in his pocket.

¶2 Brown was not charged for the domestic disturbance, but he was charged based on the methamphetamine. Prior to trial, the court concluded that the officer did not have reasonable suspicion to initially stop Brown, and it thus suppressed all evidence arising from the encounter. The People filed this interlocutory appeal. We now reverse.

¶3 We conclude that the officer had reasonable articulable suspicion that Brown was involved in an act of domestic violence. Hence, we reverse the trial court's suppression order and remand for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶4 Officer Fernandes was in his police car, with the windows down, on patrol near a storage facility in Colorado Springs. As he passed the storage facility, he heard what he believed to be a man and woman yelling on the other side of the facility's locked gate,

but he could not see the people. The officer contacted police dispatch to advise them of this disturbance. Dispatch informed the officer that they were currently receiving a call regarding a possible domestic disturbance at his location; specifically, a woman had called to report that her significant other, Alexis Brown, had damaged the windshield of her car. When the officer finished communicating with dispatch, the yelling had stopped. At this time, the officer saw a man leaving the area; the man was the only person the officer saw. The officer contacted the man and asked him to identify himself. The man identified himself as Alexis Brown and provided his birthdate.

¶5 The officer ran a records check on Brown's name and birthdate, which indicated that there was an active warrant for Brown's arrest. Another officer arrived on the scene, took Brown into custody, and brought him to jail. While Brown was being searched prior to being put into the jail, methamphetamine was found in his pocket. Ultimately, the prosecution did not bring charges regarding the reported domestic disturbance, but it did charge Brown with multiple crimes based on the methamphetamine found in his pocket.[1]

¶6 Brown moved to suppress the evidence arising from his encounter with the officer, including the subsequent discovery of methamphetamine. He argued that the police had no reason to stop him. The court granted his motion, stating that "[t]here was no nexus between this alleged criminal activity and the defendant that would have justified an

---

[1] Possession of a controlled substance, a class 4 drug felony, § 18-18-403.5(1), (2)(a), C.R.S. (2018), and introducing contraband, a class 4 felony, § 18-8-203(1)(a), C.R.S. (2018).

investigatory stop. There's no description that was even given to the officer of an alleged individual [who] had supposedly committed these acts."

¶7    The People filed a timely interlocutory appeal.

## II. Jurisdiction and Standard of Review

¶8    Pursuant to C.A.R. 4.1 and section 16-12-102(2), C.R.S. (2018), the People may bring an interlocutory appeal under these circumstances.[2] The review of a suppression order presents us with a mixed question of law and fact; therefore, we accept the trial court's findings of fact that are supported by competent evidence, but we review the application of the law to those facts de novo. *See People v. Chavez-Barragan*, 2016 CO 16, ¶ 9, 365 P.3d 981, 983.

## III. Analysis

¶9    We begin by laying out the controlling authority regarding reasonable suspicion. We then apply that law to the facts of this case and conclude that the officer had reasonable suspicion to stop Brown. Hence, we reverse the trial court's order suppressing the evidence arising out of this encounter.

### A. Law

¶10    Both the U.S. and Colorado Constitutions require that searches and seizures by the government be supported by probable cause. U.S. Const. amend. IV; Colo. Const. art. II,

---

[2] As required by both the rule and the statute, the People certified that this appeal was not taken for the purposes of delay and that the suppressed evidence was a substantial part of the proof of the charges pending against Brown.

§ 7. In certain circumstances, however, a police officer may stop an individual with less than probable cause without offending the individual's constitutional protections against unreasonable seizures. *See Terry v. Ohio*, 392 U.S. 1, 20–21 (1968). Police officers may conduct a brief investigatory stop if they are "operating with a reasonable suspicion of criminal activity." *People v. Ingram*, 984 P.2d 597, 603 (Colo. 1999). In other words, they must have "a specific and articulable basis in fact for suspecting that criminal activity has occurred, is taking place, or is about to take place." *People v. Perez*, 690 P.2d 853, 855 (Colo. 1984) (quoting *People v. Thomas*, 660 P.2d 1272, 1274 (Colo. 1983)); *see also Terry*, 392 U.S. at 21–22 ("[T]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the stop]."). The narrow question before us is whether the officer had reasonable suspicion to stop Brown.

¶11 When determining whether an officer had reasonable suspicion to stop a person, courts look to the totality of circumstances, keeping in mind that "[a]n officer is entitled to draw reasonable inferences from all the circumstantial evidence 'even though such evidence might also support other inferences.'" *People v. Threlkel*, 2019 CO 18, ¶ 20, 438 P.3d 722, 727 (quoting *People v. Reyes-Valenzuela*, 2017 CO 31, ¶ 14, 392 P.3d 520, 523). We have previously listed some nonexhaustive factors to be considered when making this determination:

> (1) the particularity of the description of the offender or the vehicle in which he fled; (2) the size of the area in which the offender might be found, as indicated by such facts as the elapsed time since the crime occurred; (3) the number of persons about in that area; (4) the known or probable direction

5

of the offender's flight; (5) observed activity by the particular person stopped; and (6) knowledge or suspicion that the person or vehicle stopped has been involved in some criminality of the type presently under investigation.

*People v. Bell*, 698 P.2d 269, 272 (Colo. 1985) (quoting *People v. Mascerenas*, 666 P.2d 101, 108 (Colo. 1983)).

¶12    With these standards in mind, we now turn to the facts of this case.

## B.  Application

¶13    In finding that the officer lacked reasonable suspicion to stop Brown, the trial court focused on the lack of a physical description from dispatch.  While that is certainly a factor, it is not dispositive; instead, the totality of the circumstances must be considered.  Considering all of the circumstances, we conclude that the officer had reasonable suspicion to stop Brown.

¶14    To begin, the officer had received a report that a crime had just been, or was being, committed by a male who was at or near the storage facility.  The officer had heard yelling before he called dispatch, but the yelling had stopped by the time he finished talking to dispatch; therefore, it was reasonable to believe that the disturbance had just ended, and that the parties may be leaving the immediate area.  While dispatch did not provide a physical description of Brown, the officer could reasonably conclude that he was looking for a male who was still at or near the storage facility, but who was in the process of leaving the area.  In sum, Brown was the only person in the area where a domestic disturbance had been heard and reported seconds earlier.  The officer thus had a specific and articulable basis to believe that Brown was the male involved in the domestic

6

disturbance, meaning it was reasonable for the officer to stop Brown and ask him his name.

¶15    Brown argues that the storage facility was next to a tavern, suggesting that there was a perfectly innocent explanation as to why he was in the area at that time. That may be so, but "[a] reasonable, articulable suspicion 'may exist even where innocent explanations are offered for conduct.'" *Reyes-Valenzuela*, ¶ 14, 392 P.3d at 523 (quoting *People v. Castaneda*, 249 P.3d 1119, 1122 (Colo. 2011)). Therefore, the fact that Brown *could* have been coming from the tavern does not defeat the officer's reasonable suspicion.

## IV. Conclusion

¶16    For the foregoing reasons, we hold that the officer had reasonable suspicion to stop Brown. Hence, we reverse the trial court's suppression order and remand for further proceedings consistent with this opinion.