**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Bernadette Denise CHERRY, Defendant–Appellee.**

**No. 05SA110.**

Supreme Court of Colorado, En Banc.

Sept. 12, 2005.

Don Quick, District Attorney, Seventeenth Judicial District, Michael J. Milne, Senior Deputy District Attorney, Brighton, for Plaintiff–Appellant.

David S. Kaplan, Colorado State Public Defender, Jennifer L.M. Ahnstedt, Deputy State Public Defender, Brighton, for Defendant–Appellee.

Justice BENDER delivered the Opinion of the Court.

The People filed this interlocutory appeal challenging the trial court's ruling that an officer from the Aurora Police Department violated the defendant's, Bernadette Cherry, Fourth Amendment rights because he lacked reasonable suspicion to stop her. Because Cherry was illegally parked in the middle of the street at the time the police first contacted her, the officer had a reasonable and articulable basis to believe criminal activity was occurring and therefore, she was not illegally seized for purposes of the Fourth Amendment. Hence, we reverse the trial court's suppression order and remand this case to that court for further proceedings.

## I. Facts and Proceedings Below

The People appeal the trial court's holding that the defendant's Fourth Amendment rights were violated because the police had neither a reasonable nor an articulable basis for contacting Bernadette Cherry. The trial court therefore suppressed all evidence obtained as a result of this contact. Following is a summary of the evidence provided to the trial court at the suppression hearing.

Officer Shawn Kurian of the Aurora Police Department was driving westbound on Colfax Avenue when he spotted a car parked in the driving lane of a side street and two males standing near the passenger side window. The car was stopped roughly three to four feet from the curb and as Kurian approached the vehicle, the two males walked away. Kurian then pulled his patrol car behind the parked car and turned on his car's overhead lights.

Officer Michael Gaskill pulled in behind Kurian shortly after Kurian stopped his vehicle. Kurian approached the driver of the parked vehicle, Cherry, while Gaskill made contact with one of the individuals who had been seen near the car. Kurian asked Cherry for her driver's license, registration, and proof of insurance. While speaking with

Cherry, Kurian saw a cellophane bag containing a green leafy substance and some money partially sticking out of a handbag inside the vehicle. Kurian asked Cherry what was in the bag and she responded that it was her "weed" or marihuana.

Cherry got out of the car and Kurian seized the marihuana from within the vehicle. Kurian then patted Cherry down for weapons and noticed a bulge in her tight-fitting spandex shorts. He asked her what it was to which she responded: "It's my crack." Tests later determined that she had roughly 15 grams of crack cocaine on her person.

Cherry was arrested and charged with the unlawful possession of more than one gram of a schedule II controlled substance[1] and possession of less than an ounce of marihuana.[2] In his police report, Kurian cited Colorado statute 42–4–805(7) as the basis for stopping Cherry; however, there is no indication in the record that she was given a citation for this offense. This statute establishes that "[p]edestrians shall only be picked up where there is adequate road space for vehicles to pull off and not endanger and impede the flow of traffic." § 42–4–805(7), C.R.S. (2005). A violation of the statute is a class B traffic offense. § 42–4–805(9), C.R.S. (2005).

Cherry moved to suppress the evidence seized by the police officers, claiming that she was illegally stopped. That is, Kurian did not have a reasonable or articulable basis that criminal activity was occurring and only stopped her because of the officer's "hunch" that criminal activity was afoot.

A hearing was held where officers Kurian and Gaskill testified to the events that lead to Cherry's arrest. The trial court granted Cherry's motion to suppress evidence and found that there was no reasonable, articulable basis that criminal activity was occurring. The trial court found that Kurian's testimony concerning why he made the stop was not credible and that the purpose for stopping Cherry was to investigate a suspected crime and not for a traffic violation.

Pursuant to C.A.R. 4.1 and section 16–12–102(2), C.R.S. (2005), the People filed this interlocutory appeal seeking review of the trial court's order suppressing the evidence obtained and claim that Cherry was not the subject of an illegal stop.

## II.  Analysis

■■■ The Fourth Amendment to the U.S. Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *See also* Colo. Const. art. II, § 7. A warrantless arrest is reasonable where the police officer has probable cause to believe that a crime is being committed or was committed. *Devenpeck v. Alford,* —— U.S. ——, 125 S.Ct. 588, 593, 160 L.Ed.2d 537 (2004). "[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *People v. Altman,* 938 P.2d 142, 145 (Colo.1997) (finding that a cracked windshield and illegible license plate gave rise to reasonable suspicion that criminal activity had occurred or was occurring). The Fourth Amendment does not require the offense that established probable cause be "closely related" to the offense charged by the arresting officer. *Devenpeck,* 125 S.Ct. at 594 (holding that the initial stop by officer was based on reasonable suspicion that defendant was impersonating a police officer, although another officer arrested defendant for Privacy Act violation).

■■■ The subjective intention of an officer is "irrelevant to the existence of probable cause" for an arrest. *Devenpeck,* 125 S.Ct. at 593. Similarly, the officer's subjective intent is not relevant to a determination that he has reasonable suspicion to conduct an investigatory stop. *People v. Rodriguez,* 945 P.2d 1351, 1360 (Colo.1997); *Altman,* 938 P.2d at 146–47. What is relevant is the existence of specific and articulable facts and the rational inferences from those facts that create a reasonable suspicion of criminal activity. *Rodriguez,* 945 P.2d at 1360; *Altman,* 938 P.2d at 147.

In *Whren,* the Supreme Court held that police officers had probable cause to believe

---

1.  § 18–18–405, C.R.S. (2005).

2.  § 18–18–406(1), C.R.S. (2005).

that the defendants had violated the traffic code when they were observed making a sudden right-hand turn without signaling and speeding off at an "unreasonable" speed. 517 U.S. at 819, 116 S.Ct. 1769. Thus, the traffic stop was reasonable for purposes of the Fourth Amendment and the evidence of the drugs found within the vehicle was admissible. *Id.* The Court emphasized that the subjective intent of the officer had no role in determining the reasonableness of the stop and that it did not matter that a "reasonable officer" may not have made the stop. *Id.* at 813–16, 116 S.Ct. 1769.

 Turning to this case, Officer Kurian testified, and the trial court found, that Cherry was parked in the middle of the street, three to four feet from the curb. In addition to section 42–4–805(7) cited in Kurian's police report, section 42–4–1205, C.R.S. (2005), states that it is a class B traffic offense to park one's vehicle further than twelve inches from the curb.[3] Thus, Cherry violated this statute when she parked her car in the traffic lane well beyond the twelve-inch limit established by statute.

The trial court also found that Cherry was not impeding the flow of traffic. This finding, however, imposes an additional element that is not required by section 42–4–1205— that her vehicle obstruct the flow of traffic. Further, the court found Kurian not credible concerning his stated purpose for stopping the vehicle. This finding, however, of the "officer's illicit motives will not invalidate an otherwise valid search or seizure" and an officer's hunch that criminal activity is occurring will not invalidate an officer's otherwise

legal justification for stopping an individual. *Rodriguez*, 945 P.2d at 1360.

In this case, the officers were legally justified to approach a vehicle stopped in the middle of the road in violation of state statute irrespective of the officers' subjective intent for contacting the vehicle. Hence, we hold that the trial court erred when it ruled that Cherry was subjected to an illegal stop.

### III. Conclusion

For the reasons stated above, we reverse the trial court and remand this case to that court for further proceedings.

---

3. Section 42–4–1205 states:
    **Parking at curb or edge of roadway.** (1) Except as otherwise provided in this section, every vehicle stopped or parked upon a two-way roadway shall be so stopped or parked with the right-hand wheels parallel to and within twelve inches of the right-hand curb or as close as practicable to the right edge of the right-hand shoulder.
    (2) Except as otherwise provided by local ordinance, every vehicle stopped or parked upon a one-way roadway shall be so stopped or parked parallel to the curb or edge of the roadway in the direction of authorized traffic movement, with its right-hand wheels within twelve inches of the right-hand curb or as close as practicable to the right edge of the right-

hand shoulder or with its left-hand wheels within twelve inches of the left-hand curb or as close as practicable to the left edge of the left-hand shoulder.
    (3) Local authorities may by ordinance permit angle parking on any roadway; except that angle parking shall not be permitted on any state highway unless the department of transportation has determined by resolution or order entered in its minutes that the roadway is of sufficient width to permit angle parking without interfering with the free movement of traffic.
    (4) Any person who violates any provision of this section commits a class B traffic infraction.