2012 CO 75

**Walter James TATE, Petitioner**

**v.**

**The PEOPLE of the State of Colorado, Respondent.**

**No. 11SC382.**

Supreme Court of Colorado,
En Banc.

Dec. 20, 2012.

Douglas Wilson, Colorado State Public Defender, Nicholas Sarwark, Deputy State Public Defender, Jennifer Longtin, Deputy State Public Defender, Centennial, Colorado, Attorneys for Petitioner.

Carol Chambers, District Attorney, Eighteenth Judicial District, Andrew Cooper, Chief Deputy District Attorney, Centennial, Colorado, Attorneys for Respondent.

Justice COATS delivered the Opinion of the Court.

¶ 1 Tate sought review of the judgment of the District Court in and for the Eighteenth Judicial District in *Tate v. People*, 09CV2334, reversing a suppression order of the Arapahoe County Court. In a prosecution of Tate for Driving Under the Influence, the trial court found that he had been stopped without reasonable articulable suspicion the moment a patrol car parked behind him, hemming in his car, even though he was asleep and unaware of the officer at the time. On interlocutory appeal by the People, the district court concluded that the earliest moment at which the defendant could have been seized occurred when he awoke and became aware of his circumstances, and by that point in time the officer had acquired at least reasonable suspicion to justify a stop.

¶ 2 Because a person cannot be seized within the meaning of the Fourth Amendment, even if his freedom of movement is actually restricted, without perceiving a show of authority as directed at him or his car, the judgment of the district court is affirmed and

the case is remanded for return to the county court and implementation of the district court's remand order.

## I.  Facts and Procedural History

¶ 3 Walter Tate was charged with Driving Under the Influence after being discovered asleep in a parked car, with its motor running, in the middle of the night.  He moved for suppression of all evidence and statements acquired by the police on a number of grounds, including that his initial detention violated the Fourth Amendment.  After a hearing, at which the arresting officer was the only witness, the trial court made findings of fact and conclusions of law.

¶ 4 Based on the officer's testimony, the court found that he observed the defendant's vehicle at four-thirty-five in the morning, with the driver's window down and engine running, parked with cars in front and on either side of it.  The court found that the officer then pulled up behind the vehicle, effectively blocking it in, and as he approached, saw the defendant sleeping in the driver's seat, with open, empty beer cans on the passenger side.  After making several attempts by knocking on the window, the officer was able to awaken the defendant and found him to be confused and tired, with an odor of alcohol on his breath and his pants undone and apparently urine stained.  The defendant was eventually arrested and charged.

¶ 5 The trial court concluded that the defendant was seized for purposes of the Fourth Amendment at the moment the officer parked behind his vehicle because at that point, if he wanted to leave, he would have been unable to do so.  With regard to the fact that the defendant was asleep and unaware of the patrol car, the court made clear its understanding that the objective, totality-of-circumstances test for determining a Fourth Amendment stop does not depend on any awareness by the person being detained that his freedom of movement has been curtailed.  Specifically finding irrelevant the defendant's lack of awareness that he had been blocked in, and finding that the officer lacked reasonable articulable suspicion for a stop at the moment he pulled in behind the defen-

dant's vehicle, the court found the defendant to have been unlawfully seized, and it granted his motion to suppress.

¶ 6 The People filed an interlocutory appeal in the district court, pursuant to Crim. P. 37.1.  The district court reversed and remanded the case, reasoning that the totality-of-circumstances test for a Fourth Amendment stop, as articulated by the United States Supreme Court, requires a conscious awareness by the suspect of police conduct infringing on his liberty.  Reasoning further that the officer had acquired reasonable articulable suspicion by the time the defendant was aware of his presence, the district court found the stop to be lawful.  The defendant petitioned for a writ of certiorari.

## II.  Analysis

¶ 7 A person is seized by the police within the contemplation of the Fourth Amendment when an officer, by means of physical force or show of authority, terminates or restrains his freedom of movement through means intentionally applied.  *Brendlin v. California*, 551 U.S. 249, 254, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007).  "A police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned."  *Id.* (citing *California v. Hodari D.*, 499 U.S. 621, 626 & n. 2, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)).  The standard adopted by the Court to deal, in particular, with those situations in which the actions of the police do not show unambiguous intent to restrain or in which submission takes the form of passive acquiescence is whether "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave," *id.* at 255, 127 S.Ct. 2400 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)); or where, for reasons unrelated to the police presence a person has no desire to leave anyway, whether "a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter."  *Id.* (quoting *Flor-*

*ida v. Bostick,* 501 U.S. 429, 435–36, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)).

¶ 8 When faced squarely with the question, the Supreme Court in *Brendlin* held that a traffic stop subjects not only the driver, but also his passengers, to a Fourth Amendment seizure. *Id.* at 257, 259 n. 5, 127 S.Ct. 2400 (overruling, *inter alia, People v. Jackson,* 39 P.3d 1174 (Colo.2002)). The Court resolved that question by asking whether a reasonable person in Brendlin's position, riding as a passenger in a car pulled over by the police, would have believed himself free to terminate the encounter between the police and himself, and it answered the question by concluding that any reasonable passenger would have understood the police officers to be exercising control to the point that no one in the car would be free to depart without police permission. *Id.* at 256–57, 127 S.Ct. 2400. In resolving the matter as it did, the Court expressly held that the issue in the case was "whether a reasonable passenger would have perceived that the show of authority was at least partly directed at him, and that he was thus not free to ignore the police presence and go about his business." *Id.* at 261, 127 S.Ct. 2400.

¶ 9 The Court, however, not only ruled that a reasonable passenger in such a vehicle is stopped by submitting to a show of authority he reasonably perceives to be directed against him but also, and perhaps more importantly, that this ruling would not encompass other motorists who, by virtue of the original detention, were themselves unable to proceed, for the reason that an occupant of a car who knows that he is stuck in traffic as the result of another car being pulled over "would not perceive a show of authority as directed at him or his car." *Id.* at 261–62, 127 S.Ct. 2400. Necessarily implied in the statement that a motorist, despite being unable to proceed, has nevertheless not been seized within the meaning of the Fourth Amendment unless he perceives a show of authority *directed against him* is the proposition that he cannot have been seized if he fails to perceive any show of authority at all. As Professor LaFave has observed, "If, as stated in *Brendlin,* for a person to be seized he must 'perceive a show of authority as

directed at him' it would seem to follow that if the person claiming to have been subjected to a *Terry* stop was not aware of that police conduct necessary to 'a show of authority,' then again there has been no seizure." 4 Wayne R. LaFave, Search and Seizure § 9.4, at 153 (4th ed. Supp. 2011–2012) (quoting *Brendlin,* 551 U.S. at 262, 127 S.Ct. 2400).

¶ 10 Other state and federal courts, relying on the same Supreme Court authorities or ones similar to those relied on by the Court in *Brendlin* have also found that a person must be aware of police presence before a seizure can occur. *See, e.g., G.M. v. State,* 19 So.3d 973 (Fla.2009) (relying largely on *Hodari D.*'s requirement of actual submission for that proposition); *In re Mackey,* 124 Idaho 585, 861 P.2d 1250 (Idaho Ct.App.1993) (same); *see also, e.g., Yam Sang Kwai v. INS,* 411 F.2d 683, 686 (D.C.Cir.1969) (pre-*Hodari D.* and *Mendenhall* case largely relying on definition of an investigatory stop from *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), itself, for proposition that "[t]here can be no seizure where the subject is unaware that he is 'seized' "). This proposition could be derived in greater detail according to the same reasoning and authorities relied on by the Supreme Court, similarly demonstrating that without some awareness of a show of authority directed against him, even actual restrictions on a person's freedom of movement would not tend to affect the sense of security and privacy protected by the Fourth Amendment. *See Brendlin,* 551 U.S. at 262, 127 S.Ct. 2400. In light of both the rationale and holding of *Brendlin,* however, further justification seems entirely unnecessary.

¶ 11 The county court therefore erred in concluding that awareness is irrelevant to the question of a Fourth Amendment seizure. A person who is unconscious clearly cannot perceive that there has been a show of authority directed against him, and the defendant could therefore not be seized within the contemplation of the Fourth Amendment until he awoke. As the district court found, on the basis of the trial court's factual findings, the officer had reasonable suspicion justifying an investigatory stop by the time the defendant awoke and was conscious.

### III.  Conclusion

¶ 12 The judgment of the district court is therefore affirmed, and the case is remanded for return to the county court and implementation of the district court's own remand order.