Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
April 24, 2017

**2017 CO 31**

**No. 16SA245, <u>People v. Reyes-Valenzuela</u>—Criminal Law—Evidence Suppression.**

This interlocutory appeal requires the supreme court to answer whether an officer, with a reasonable, articulable suspicion that criminal behavior is afoot, must consider the possible innocent explanations for otherwise suspicious behavior before conducting an investigatory stop.  The supreme court holds that, because case law from this court and the United States Supreme Court does not require an officer to consider every possible innocent explanation for criminal behavior, the officers in this case justifiably performed an investigatory stop on the defendant based on a reasonable, articulable suspicion of ongoing criminal activity.  The supreme court therefore reverses the trial court's suppression order and remands for proceedings consistent with this opinion.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2017 CO 31

### Supreme Court Case No. 16SA245
*Interlocutory Appeal from the District Court*
El Paso County District Court Case No. 15CR4742
Honorable Marla R. Prudek, Judge

### Plaintiff-Appellant:

The People of the State of Colorado,

v.

### Defendant-Appellee:

Gonzalo V. Reyes-Valenzuela.

### Order Reversed
*en banc*
April 24, 2017

**Attorneys for Plaintiff-Appellant:**
Daniel H. May, District Attorney, Fourth Judicial District
Jakrapong Pattamasaevi, Deputy District Attorney
Doyle Baker, Senior Deputy District Attorney
    *Colorado Springs, Colorado*

**Attorneys for Defendant-Appellee:**
Douglas K. Wilson, Public Defender
Tracy C. Renner, Deputy Public Defender
Rosemarie S. Offord, Deputy Public Defender
    *Denver, Colorado*

**CHIEF JUSTICE RICE** delivered the Opinion of the Court.

¶1     This interlocutory appeal requires us to answer whether an officer, with a reasonable, articulable suspicion that criminal behavior is afoot, must consider the possible innocent explanations for otherwise suspicious behavior before conducting an investigatory stop. Specifically, when an officer is aware that a person is driving around late at night, going in and out of unfinished houses in an area where there had been recent break-ins of unfinished houses, and carrying a black bag, is that officer required to consider possible innocent explanations before conducting an investigatory stop of that person? We hold that, because case law from this court and the United States Supreme Court does not require an officer to consider every possible innocent explanation for criminal behavior, the officers in this case justifiably performed an investigatory stop on the defendant based on a reasonable, articulable suspicion of ongoing criminal activity. We therefore reverse the trial court's suppression order and remand for proceedings consistent with this opinion.

## I. Facts and Procedural History

¶2     Around 11:30 p.m., a concerned citizen ("the caller") called El Paso County law enforcement because the caller witnessed a possible break-in in a partially developed residential neighborhood. The caller said he saw a person, later identified as Defendant Gonzalo V. Reyes-Valenzuela, enter several unfinished houses, leave one of the houses carrying a black bag, and use a light-colored, boxy van to travel between houses. There had been several previous reports in the same vicinity of people entering unfinished houses and stealing copper. It was also known to police that contractors occasionally worked late at night in the area.

2

¶3  An officer and her partner arrived on the scene around midnight.  The caller was standing near the van and identified himself to the deputies.  The deputies began speaking to Reyes-Valenzuela, who was inside the van.  Reyes-Valenzuela spoke limited English but provided the officers with his name and birth date.  The deputies checked his name, which revealed an outstanding arrest warrant.  The deputies then arrested Reyes-Valenzuela, properly conducted a search incident to arrest, and found drug paraphernalia and a black bag.  He was charged with first-degree criminal trespass and possession of drug paraphernalia.

¶4  Reyes-Valenzuela moved to suppress the fruits of the officers' investigatory stop, arguing that the officers did not have a reasonable, articulable suspicion for initially stopping him and talking to him.  Reyes-Valenzuela made this argument despite the following facts:  (1) the caller, who was willing to identify himself, called law enforcement around 11:30 p.m. to report a possible break-in in a partially developed residential area; (2) there had been several recent break-ins in the area in which people stole copper from unfinished houses; (3) the caller said that a person driving a boxy van was going in and out of unfinished houses; and (4) the caller saw that person leave one of the houses with a black bag and a get into the van.  Reyes-Valenzuela based his argument partially on the fact that contractors sometimes worked late at night on the unfinished houses.  Reyes-Valenzuela never disputed that he was the person that the caller saw driving from unfinished house to unfinished house.

¶5  At the hearing on the motion to suppress, the only witness—one of the deputies—testified that (1) she did not know whether Reyes-Valenzuela was authorized

to enter the houses; (2) she did not know if the black bag belonged to him; (3) she knew that contractors sometimes worked late at night on the unfinished houses; (4) she would not have had a reasonable, articulable suspicion to stop Reyes-Valenzuela if there had only been a report of someone driving around in the area; and (5) there had been past reports of burglaries in the area. Reyes-Valenzuela argued not that the caller had misidentified him, but merely that the police did not consider the possible innocent reasons for his entry of several unfinished houses late at night.

¶6 The trial court granted Reyes-Valenzuela's motion to suppress for two reasons. First, the caller had not given details about the size of the black bag or how long Reyes-Valenzuela had been in the houses, and legitimate construction activity sometimes occurred at night. Second, Reyes-Valenzuela did not attempt to flee from the deputies when they arrived on the scene. The prosecution filed a motion to reconsider, which the trial court denied. The prosecution then filed a timely interlocutory appeal pursuant to section 16-12-202(2), C.R.S. (2016), and C.A.R. 4.1.

¶7 We now reverse the trial court's suppression order and remand for proceedings consistent with this opinion.

## II. Analysis

¶8 The prosecution argues that the trial court improperly suppressed the evidence police obtained after conducting an investigatory stop of Reyes-Valenzuela. Because we conclude that the police had a reasonable, articulable suspicion to conduct an investigatory stop of Reyes-Valenzuela, we agree with the prosecution and reverse the trial court's suppression order.

¶9 "When reviewing an order suppressing evidence, we review questions of law de novo but defer to the trial court's findings of fact, provided the findings are supported by competent evidence in the record." People v. Gutierrez, 222 P.3d 925, 931–32 (Colo. 2009).

¶10 Police officers may make a brief investigatory stop "when an officer has a reasonable, articulable suspicion that criminal activity 'has occurred, is taking place, or is about to take place.'" People v. Chavez-Barragan, 2016 CO 16, ¶ 10, 365 P.3d 981, 983 (quoting People v. Ingram, 984 P.2d 597, 603 (Colo. 1999)). Under section 16-3-103(1), C.R.S. (2016), "[a] peace officer may stop any person who he reasonably suspects is committing, has committed, or is about to commit a crime and may require him to give his name and address, identification if available, and an explanation of his actions."

¶11 An officer's investigatory stop complies with the Fourth Amendment if three criteria exist: (1) the officer must have "an articulable and specific basis in fact for suspecting (i.e., a reasonable suspicion) that criminal activity has taken place, is in progress, or is about to occur"; (2) the intrusion's purpose must be reasonable; and (3) the character and scope of the intrusion must be "reasonably related to its purpose." People v. Salazar, 964 P.2d 502, 505 (Colo. 1998). In this case, only the first prong—i.e., whether the officer had a reasonable, articulable suspicion—is at issue.

¶12 In determining whether an officer had a reasonable, articulable suspicion, this court "focuses upon 'whether there were specific and articulable facts known to the officer, which taken together with reasonable inferences from these facts, created a reasonable suspicion of criminal activity to justify the intrusion into the defendant's

5

personal security.'" Id. (quoting People v. Garcia, 789 P.2d 190, 192 (Colo. 1990)). "We look to the totality of the circumstances to answer this inquiry." Id. Our inquiry focuses on an objective analysis of whether a reasonable, articulable suspicion exists and not on the subjective intent of the officer. People v. Rodriguez, 945 P.2d 1351, 1359–60 (Colo. 1997).

¶13    Nor do we focus on plausible innocent explanations for behavior that may be suspicious. The U.S. Supreme Court has held that "innocent behavior will frequently provide the basis for a showing of probable cause." United States v. Sokolow, 490 U.S. 1, 10 (1989) (quoting Illinois v. Gates, 462 U.S. 213, 243–44 (1983)). When determining whether reasonable, articulable suspicion exists, "the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." Id. (quoting Gates, 462 U.S. at 243–44). Therefore, several acts that may appear innocent in isolation may add up to a reasonable, articulable suspicion of criminal activity. See id.

¶14    A reasonable, articulable suspicion "may exist even where innocent explanations are offered for conduct." See People v. Castaneda, 249 P.3d 1119, 1122 (Colo. 2011) (holding that an even higher standard, probable cause, may exist when several otherwise-innocent acts appear, in the aggregate, to be indicative of criminal activity). "The fact that innocent explanations may be imagined does not defeat a probable cause showing." Id. "Instead, the police are entitled to draw appropriate inferences from circumstantial evidence, even though such evidence might also support other inferences." Id. Courts should not engage in a "divide-and-conquer analysis" in which

6

courts dismiss individual factors that have plausible innocent explanations. United States v. Arvizu, 534 U.S. 266, 274–75 (2002). A series of innocent factors, when taken together, may warrant further investigation by police. Id.

¶15 Further, there is no requirement that this reasonable, articulable suspicion be based solely on an officer's observations—the officer may rely on information supplied by another person, including an informant. Adams v. Williams, 407 U.S. 143, 147 (1972).

¶16 Here, we know the following facts: (1) the caller, who was willing to identify himself, called law enforcement around 11:30 p.m. to report a possible break-in in a partially developed residential area; (2) there had been several recent break-ins in the area in which people stole copper from unfinished houses; (3) the caller said that a person driving a boxy van was going in and out of unfinished houses; (4) the caller saw that person leave one of the houses with a black bag and get into the van; and (5) contractors sometimes worked late at night on the unfinished houses.

¶17 Adding up those factors that could support a reasonable, articulable suspicion that criminal activity had occurred leads to only one result: The officer had a reasonable, articulable suspicion to perform an investigatory stop of the van driver. A person going from unfinished house to unfinished house, carrying a black bag and driving a van, late at night, in an area in which someone had been breaking into unfinished houses late at night, supports a reasonable officer's reasonable, articulable suspicion that the person may be up to no good. The trial court, however, gave impermissible weight to the possible innocent explanations for Reyes-Valenzuela's

7

behavior—i.e., that contractors sometimes worked late at night. But an officer is not required to consider innocent explanations for behavior that otherwise would support reasonable, articulable suspicion. See Castaneda, 249 P.3d at 1122 ("[P]olice are entitled to draw appropriate inferences from circumstantial evidence, even though such evidence might also support other inferences.").

¶18 The trial court also gave impermissible weight to the fact that Reyes-Valenzuela did not flee. But there is no case law from this court or the U.S. Supreme Court suggesting that a lack of flight overcomes an otherwise reasonable, articulable suspicion of criminal activity—or that a lack of flight should be given any weight at all.

¶19 Therefore, the officers that stopped Reyes-Valenzuela had a reasonable, articulable suspicion to do so, and the trial court erred when it suppressed the evidence derived from that stop.

## III. Conclusion

¶20 We reverse the trial court's suppression order and remand for proceedings consistent with this opinion.