Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us.  Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 22, 2020

**2020 CO 65**

**No. 20SA115, *People v. Wheeler*—Investigatory Stop—Reasonable and Articulable Suspicion—Seizure—Extrinsic Corroborating Evidence not Required.**

In this interlocutory appeal, the supreme court considers whether the district court correctly granted the defendant's pretrial motion to suppress after finding that deputies conducted an unlawful investigatory stop of the Subaru in which he was a passenger.  The supreme court holds that the specific facts, considered together with the rational inferences that could have been drawn from those facts, provided the deputies reasonable and articulable suspicion to believe that the occupants of the Subaru were committing, had committed, or were about to commit a crime.  Accordingly, the suppression order is reversed.

**The Supreme Court of the State of Colorado**
2 East 14th Avenue • Denver, Colorado 80203

**2020 CO 65**

**Supreme Court Case No. 20SA115**
*Interlocutory Appeal from the District Court*
Huerfano County District Court Case No. 19CR289
Honorable Leslie J. Gerbracht, Judge

**Plaintiff-Appellant:**

The People of the State of Colorado,

v.

**Defendant-Appellee:**

Walter Wheeler.

**Order Reversed**
*en banc*
June 22, 2020

**Attorneys for Plaintiff-Appellant:**
Henry L. Solano, District Attorney, Third Judicial District
Rex B. Delmas, Deputy District Attorney
    *Walsenburg, Colorado*

**Attorney for Defendant-Appellee:**
Jonathan S. Willett
    *Boulder, Colorado*

**JUSTICE SAMOUR** delivered the Opinion of the Court.

¶1    In this interlocutory appeal brought by the People, we consider whether the district court correctly granted Walter Wheeler's pretrial motion to suppress after finding that deputies with the Huerfano County Sheriff's Office conducted an unlawful investigatory stop of the Subaru in which he was a passenger. Although this is a close call, we ultimately conclude that the court erred. We hold that the totality of the circumstances, and the rational inferences therefrom, provided the deputies reasonable and articulable suspicion to believe that the occupants of the Subaru were committing, had committed, or were about to commit a crime. Therefore, the suppression order is reversed.

## I. Facts and Procedural History[1]

¶2    In early November of 2019, while driving his marked patrol car on the outskirts of Walsenburg at about 3:00 in the morning, Deputy Morgan Chapman observed a Subaru turn left on County Road 525 from Highway 69. County Road 525 is in a remote area; there are no structures, facilities, or buildings around it. In fact, in the eighteen months since joining the Huerfano County Sheriff's Office, Deputy Chapman had never seen a car on that road "at that time of night." Because the Subaru's location at such a late hour raised red flags, Deputy

---

[1] This factual recitation is based on the district court's findings of fact and the uncontroverted evidence introduced during the suppression hearing.

Chapman took County Road 525 as well. As he did so, he contacted Captain Craig Lessar and Deputy Bill LaPorte by radio, and they responded in separate vehicles.

¶3 Deputy Chapman momentarily lost sight of the Subaru. But Captain Lessar indicated that he had a visual on the Subaru, which had taken a two-track road and stopped on private property belonging to a Raymond Faris. He added that the Subaru had turned off its lights and was parked next to a stock tank and a windmill. With Captain Lessar's assistance, Deputy Chapman located the Subaru. Concerned about possible poaching "due to the time of year" and possible tampering with the stock tank and windmill, Deputy Chapman approached the Subaru to contact its occupants. As he neared, the driver turned the headlights back on, shifted into reverse, and started driving backwards. Deputy Chapman thus activated his patrol car's emergency equipment. The Subaru stopped.

¶4 Deputy LaPorte arrived shortly thereafter. He contacted the driver of the Subaru, Mia Raymond, and Deputy Chapman contacted her boyfriend, Wheeler, who was in the front passenger seat. On the dashboard of the vehicle, Deputy Chapman observed in plain view a white crystalline substance that he suspected was methamphetamine. He then noticed a bag of what appeared to be methamphetamine protruding from the top of Wheeler's shoe. After stepping out of the Subaru for a weapons pat-down, Wheeler admitted that he was in possession of methamphetamine. And during subsequent searches of his person

3

and the Subaru, the deputies recovered approximately 38.5 grams of methamphetamine and $4,700 in cash. Wheeler was arrested and transported to a police station.

¶5 The People subsequently charged Wheeler with multiple crimes, including drug-related offenses. Before trial, he moved to suppress the evidence found on his person and in the car, arguing that it was seized in violation of the Fourth Amendment to the United States Constitution. The district court held an evidentiary hearing during which Deputy Chapman and Wheeler both testified. After the hearing, the court issued a written order granting the motion on the ground that the deputies lacked reasonable and articulable suspicion to conduct an investigatory stop of the Subaru.

¶6 The People then brought this interlocutory appeal pursuant to section 16-12-102(2), C.R.S. (2019), and C.A.R. 4.1(a).

## II. Jurisdiction

¶7 Under Colorado law, the People may lodge an interlocutory appeal of a district court's order in limited circumstances. *People v. Allen*, 2019 CO 88, ¶ 12, 450 P.3d 724, 728. As pertinent here, section 16-12-102(2) and Rule 4.1(a) permit the People to do so if the district court grants a defense motion to suppress evidence and the People certify both that the appeal is not taken for a dilatory purpose and that the evidence is a substantial part of the proof of the charges

4

pending. *Id.* We conclude that the People have satisfied these threshold requirements here.

### III. Standard of Review

¶8 Our review of the district court's suppression order involves "a mixed question of fact and law." *People v. Berdahl*, 2019 CO 29, ¶ 18, 440 P.3d 437, 442. We give deference to the district court's findings of fact and refrain from disturbing them if they are supported by the record. *Id.* This deference extends to a district court's credibility findings, again assuming record support. *People v. Clark*, 2020 CO 36, ¶ 21, __ P.3d __. We assess the legal effect of factual findings de novo. *Berdahl*, ¶ 18, 440 P.3d at 442.

### IV. Analysis

¶9 This case presents a straightforward question: Did the deputies have reasonable and articulable suspicion to conduct an investigatory stop of the Subaru? After discussing the relevant legal principles, we determine that they did. We thus conclude that the deputies did not violate Wheeler's Fourth Amendment rights.

### A. Relevant Legal Principles

¶10 The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures by police. *People v. Threlkel*, 2019 CO 18, ¶ 16, 438 P.3d 722, 727. However, the Fourth Amendment

does not outlaw all contact by police. *Id.* Instead, it prohibits police contact that arbitrarily and oppressively interferes "with the privacy and personal security of individuals." *Id.* (quoting *Immigration & Naturalization Serv. v. Delgado*, 466 U.S. 210, 215 (1984)).

¶11 The United States Supreme Court has recognized that the Fourth Amendment sanctions two different levels of seizure of a person: an investigatory stop and an arrest. *See People v. Fields*, 2018 CO 2, ¶ 12, 411 P.3d 661, 665 (citing *Dunaway v. New York*, 442 U.S. 200, 207–13 (1979)). The former, the less intrusive of the two, is justified when an officer has "reasonable articulable suspicion to believe that the detainee is committing, has committed, or is about to commit a crime." *Id.* The latter, the more intrusive of the two, is justified when an officer has "probable cause to believe a crime has been committed by the detainee." *Id.* In this case, we concern ourselves with the less intrusive type of seizure, an investigatory stop. *Id.*

¶12 The People bear the burden of justifying an investigatory stop. *Florida v. Royer*, 460 U.S. 491, 500 (1983). To comport with the Fourth Amendment, an investigatory stop must meet three criteria: (1) there must be "an articulable and specific basis in fact for suspecting (i.e., a reasonable suspicion) that criminal activity has taken place, is in progress, or is about to occur"; (2) the purpose of the intrusion must be reasonable; and (3) the character and scope of the intrusion must

6

be "reasonably related" to the purpose of the intrusion. *Threlkel*, ¶ 18, 438 P.3d at 727 (quoting *People v. Reyes-Valenzuela*, 2017 CO 31, ¶ 11, 392 P.3d 520, 522–23). As it bears on Wheeler's seizure, the district court found that the People failed to establish the first prong—reasonable and articulable suspicion—and we limit our review accordingly.[2]

¶13    In assessing whether an officer had reasonable and articulable suspicion to conduct an investigatory stop, we ask whether there were "facts known to the officer," which "taken together with rational inferences from those facts," gave rise to "a reasonable and articulable suspicion of criminal activity" justifying the intrusion into the defendant's personal privacy. *People v. Funez-Paiagua*, 2012 CO 37, ¶ 9, 276 P.3d 576, 578–79. Thus, reasonable suspicion must be based on more than a mere generalized suspicion or hunch. *See Terry v. Ohio*, 392 U.S. 1, 27 (1968) ("And in determining whether the officer acted reasonably . . . due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light

---

[2] In the penultimate paragraph of its order, the district court mentioned, in passing, that the deputies had failed to establish the other two prongs "at the time of the investigatory stop." But it neither made findings nor provided an explanation with respect to either prong. Moreover, elsewhere in the order, the court made clear that "[t]he central issue" before it was "whether . . . deputies had a reasonable articulable suspicion . . . to justify the investigatory stop of Ms. Raymond and Mr. Wheeler." And this was the only issue briefed by the parties.

of his experience."). This standard requires us to consider the totality of the circumstances at the time of the intrusion. *Threlkel*, ¶ 19, 438 P.3d at 727. But we rely on "an objective analysis," not on an analysis driven by the subjective intent of the officer. *Reyes-Valenzuela*, ¶ 12, 392 P.3d at 523.

¶14 An officer is entitled to draw appropriate inferences from all the circumstantial evidence, regardless of whether such evidence "might also support other inferences." *Threlkel*, ¶ 20, 438 P.3d at 727 (quoting *Reyes-Valenzuela*, ¶ 14, 392 P.3d at 523). Reasonable and articulable suspicion may exist "even where innocent explanations are offered for conduct." *Id.* (quoting *Reyes-Valenzuela*, ¶ 14, 392 P.3d at 523). Courts must guard against engaging in a "divide-and-conquer analysis" that leads to the dismissal of factors merely because they are accompanied by plausible innocent explanations. *Id.* (quoting *Reyes-Valenzuela*, ¶ 14, 392 P.3d at 523). It follows that we may not discount acts which, in isolation, seem innocent. *Id.* Several such acts "may add up to a reasonable, articulable suspicion of criminal activity." *Id.* (quoting *Reyes-Valenzuela*, ¶ 13, 392 P.3d at 523). Indeed, the Supreme Court has acknowledged that "innocent behavior frequently will provide the basis for a showing of probable cause," *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983), and probable cause is a more demanding standard than reasonable and articulable suspicion, *Threlkel*, ¶ 20, 438 P.3d at 727–28. Thus, the focus should not be on whether the defendant's conduct is innocent or guilty, but

rather, on "the degree of suspicion that attaches to particular types of noncriminal acts." *Threlkel*, ¶ 20, 438 P.3d at 728 (quoting *Reyes-Valenzuela*, ¶ 13, 392 P.3d at 523).

## B. Application

¶15 The district court determined that "the only evidence [in] the record to support the investigatory stop . . . [was] the notion that it is unusual for a vehicle to turn left off of Highway 69 onto County Road 525 at 3 a.m." In so doing, the court appeared to concentrate on the point in time at which Deputy Chapman decided to follow the Subaru on County Road 525. But the deputy's suspicion did not constitute a seizure and, consequently, did not trigger the protections of the Fourth Amendment. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991) ("The word 'seizure'" in the Fourth Amendment "readily bears the meaning of a laying on of hands or application of physical force to restrain movement," and thus, cannot "remotely apply . . . to the prospect of a policemen yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee."); *see also People v. Archuleta*, 980 P.2d 509, 514 (Colo. 1999) (relying on *Hodari D.* for the proposition that "a police officer's chase of a suspect does not trigger the protections of the Fourth Amendment because it is not a seizure"). A seizure within the contemplation of the Fourth Amendment occurs "when an officer, by means of physical force or show of authority, terminates or restrains [a person's] freedom of movement

9

through means intentionally applied." *Tate v. People*, 2012 CO 75, ¶ 7, 290 P.3d 1268, 1269.

¶16 Wheeler wasn't seized until Deputy Chapman activated his patrol car's emergency equipment and stopped the Subaru. *See id.* By then, the deputies had acquired knowledge of additional facts. However, because the district court applied an erroneous analytical framework, it did not consider these facts or the rational inferences the deputies may have drawn from them.

¶17 Here are all the facts the deputies had knowledge of when they seized Wheeler:

- It was 3:00 in the morning.

- The Subaru was on County Road 525, in the outskirts of Walsenburg.

- County Road 525 is in a remote area; there are no structures, facilities, or buildings around it.

- Deputy Chapman had never seen a car on County Road 525 at that time of night in the eighteen months since joining the Huerfano County Sheriff's Office.

- The Subaru took a two-track road and then entered private property.

- The Subaru parked next to a stock tank and a windmill.

- The Subaru's headlights had been turned off.

- Deputy Chapman was concerned about tampering with the stock tank and the windmill; as well, he was concerned about poaching given the time of year.

- When Deputy Chapman approached in his patrol car, the driver of the Subaru turned the headlights back on, shifted into reverse, and started driving backwards.

¶18 Though not an easy call, we conclude that the totality of these circumstances and the rational inferences that may be drawn therefrom sufficed to provide the deputies reasonable and articulable suspicion to believe that the occupants of the Subaru had committed, were committing, or were about to commit poaching or tampering with property. The Subaru took a remote road in rural Colorado at 3:00 in the morning, proceeded to a two-track road that led it to private property, parked next to a windmill and a stock tank, and turned off its headlights. Then, when Deputy Chapman's patrol car approached, the driver turned the headlights back on, shifted into reverse, and started driving backwards.[3] And it was hunting season. In our view, under these circumstances, Deputy Chapman's suspicion of criminal activity was objectively reasonable.

¶19 We acknowledge that before granting Wheeler's motion to suppress, the district court considered Deputy Chapman's concerns regarding poaching and tampering. However, it dismissed them because the People didn't present extrinsic corroborating evidence. For example, as it relates to Deputy Chapman's

---

[3] While not necessarily indicative of wrongdoing, "evasive behavior is a pertinent factor in determining reasonable suspicion." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

11

concern about poaching, the court observed that the People failed to introduce any evidence that there had been reports of "spot-lighting" (nocturnal hunting) or 911 calls of shots being fired in the area. But the court didn't find Deputy Chapman generally incredible. Nor did it find incredible his testimony that, given the totality of the circumstances (including the time of year), he was concerned that the occupants of the Subaru were poaching. And the Supreme Court has never required the prosecution to present extrinsic evidence in a suppression hearing to substantiate an officer's credible testimony regarding his reasonable and articulable suspicion that criminal activity had occurred, was afoot, or was about to occur.

¶20    To the extent the district court disbelieved Deputy Chapman's testimony, that assessment is not reflected in the suppression order. Had the district court explicitly found that Deputy Chapman's ostensible concerns about poaching and tampering were fabricated or otherwise unreliable, the posture of this appeal would likely be different.[4] Given the record before us, and given further that we

---

[4] We, of course, recognize that an officer's subjective intent "is not relevant to a determination that he has reasonable suspicion to conduct an investigatory stop." *People v. Cherry*, 119 P.3d 1081, 1083 (Colo. 2005). But, while Deputy Chapman's subjective motivation for conducting the investigatory stop is irrelevant, his testimony regarding concerns about poaching and tampering based on the rational inferences that may be drawn from the specific and articulable facts present at the time of the stop, is not. *See id.*

are not at liberty to make our own credibility findings, we must accept that Deputy Chapman's relevant testimony was credible.

¶21 Because the totality of the circumstances present at the time of the stop and the rational inferences that may be drawn from those circumstances provided the deputies with reasonable and articulable suspicion to believe that the occupants of the Subaru were committing, had committed, or were about to commit poaching or tampering, the investigatory stop of Wheeler did not violate his Fourth Amendment rights. Therefore, the district court erred in granting the motion to suppress.

## V. Conclusion

¶22 For the foregoing reasons, we conclude that the district court erroneously found that Deputy Chapman and his fellow deputies violated Wheeler's Fourth Amendment rights. Accordingly, we reverse the suppression order and remand the case for further proceedings consistent with this opinion.