23CA1122 Peo v Miller 07-10-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1122
El Paso County District Court No. 22CR5058
Honorable Laura N. Findorff, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Cara Powers Miller,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE J. JONES
Kuhn and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 10, 2025

Philip J. Weiser, Attorney General, Jessica E. Ross, Senior Assistant Attorney General and Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Claire Pakis, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Cara Powers Miller, appeals the district court's judgment of conviction entered on jury verdicts finding her guilty of one count of possession of a controlled substance with intent to sell or distribute, three counts of possession of a controlled substance, and one count of possession of drug paraphernalia.  We affirm.

## I.    Background

¶ 2    Late one rainy night, Colorado Springs Police Department Officer Spinelli saw a car drive by her patrol car without a license plate "where the license plate normally would go."  She pulled over the car.  When she started walking to the car, she saw what looked like a temporary tag taped to the inside of the rear window.

¶ 3    Officer Spinelli spoke to the driver through the passenger side window.  He gave her a purported bill of sale for the car.  Miller was sitting in the passenger seat.  Officer Spinelli saw a roll of tinfoil at Miller's feet.  When backup arrived, Officer Spinelli went around to the driver's side of the car.  After another officer saw a piece of tinfoil with burnt residue on it inside the car near the driver's feet, the officers told the driver and Miller to get out of the car.  (Miller was uncooperative throughout the encounter, until officers pulled her out of the car.)  Miller had a glass pipe in her hand.

1

¶ 4     Officers searched Miller and the car, finding (1) $236 in cash (in Miller's bra); (2) a glass tube (on the passenger seat); (3) a bag with pills separated into groups of smaller bags (under the passenger seat); (4) cut straws, tinfoil, needles, and more baggies (in Miller's purse); (5) small amounts of suspected heroin; and (6) an "air-soft" gun (underneath the passenger seat).  Following lab testing of the suspected drugs, the People charged Miller with one count of possession with intent to sell or distribute a controlled substance (fentanyl), three counts of possession of a controlled substance (methamphetamine, heroin, and cocaine), and one count of possession of drug paraphernalia.  A jury found her guilty of all charges.

## II.    Discussion

¶ 5     Miller contends that (1) the district court erred by denying her motion to suppress the evidence obtained as a result of the traffic stop; (2) the evidence was insufficient to prove that she possessed four or more grams of fentanyl; and (3) the district court erred by failing to give the jury a "bridge instruction" in connection with the instruction on the lesser included offense of simple possession of fentanyl.  We address and reject these contentions in turn.

### A. Motion to Suppress

¶ 6 Miller's attorney moved to suppress the evidence obtained from the traffic stop, arguing that although Officer Spinelli had reasonable suspicion to make the traffic stop, that reasonable suspicion evaporated once she got out of her patrol car and saw the temporary tag taped to the inside of the rear window.[1] Following an evidentiary hearing, the district court denied the motion. It relied primarily on *People v. Hayes*, 2020 COA 175, in which the division held that when a temporary tag isn't properly placed in accordance with sections 42-3-202 and -203, C.R.S. 2024, there is reasonable suspicion for an investigatory stop. In this case, as in *Hayes*, the temporary tag's placement didn't comply with sections 42-3-202 and -203, so, the district court ruled, the continuation of the stop was lawful.

¶ 7 On appeal, Miller advances the same argument she made below, focusing on Officer Spinelli's testimony that, when she first saw the tag, she didn't recall the law applicable to the placement of tags, but was told of it by another officer who arrived at the scene

---

[1] As it turns out, the temporary tag was a fake.

as backup. According to Miller, this means there was no reasonable suspicion at the point when officers first saw suspicious items in the car. We reject Miller's argument.

### 1. Standard of Review

¶ 8 Our review of a district court's ruling on a motion to suppress evidence involves a mixed question of fact and law. *People v. Threlkel*, 2019 CO 18, ¶ 15. We defer to the district court's factual findings if they have record support but review de novo the court's legal conclusions. *Id.* If, as in this case, the issue presented on appeal is preserved and we determine that the court erred by denying the motion, we reverse unless the People show that the error was harmless beyond a reasonable doubt. *Pettigrew v. People*, 2022 CO 2, ¶ 50; *see also Hagos v. People*, 2012 CO 63, ¶ 11.

### 2. Analysis

¶ 9 One exception to the Fourth Amendment's warrant requirement is that an officer may make an investigatory stop if there is reasonable suspicion of criminal activity. *People v. Vaughn*, 2014 CO 71, ¶ 11. "In the context of traffic stops, an officer need only have a reasonable suspicion of a traffic violation — i.e., an

objectively reasonable basis to believe that a driver has committed a traffic offense — in order to pull the driver over." *Id.*

¶ 10    "[A]n officer's subjective motives for stopping a driver are irrelevant in determining whether an officer had reasonable suspicion." *Id.* Rather, "[w]hat is relevant is the existence of specific and articulable facts and the rational inferences from those facts that create a reasonable suspicion of criminal activity." *People v. Cherry*, 119 P.3d 1081, 1083 (Colo. 2005); *accord People v. Wheeler*, 2020 CO 65, ¶ 13 (noting that this is an objective analysis).

¶ 11    In *Hayes*, the division addressed the same factual situation as that before us in this case. A police officer saw a car that he thought didn't have either a license plate or a temporary tag. *Hayes*, ¶ 3. But after the officer stopped the car, he saw a temporary tag in the rear window. *Id.* After determining that the placement of the temporary tag violated sections 42-3-202 and -203, the division held that the violation constituted reasonable suspicion and that "[t]he stop continued to be lawful even after the officer saw the temporary [tag] because it was not in the location required by law." *Hayes*, ¶ 24.

¶ 12    We don't see any meaningful distinction between this case and *Hayes*. Officer Spinelli also thought the car didn't have a plate or tag but saw a temporary tag in the rear window when she got out of her patrol car. The placement of the tag was a fact known to Officer Spinelli and therefore objectively established reasonable suspicion for continuing the stop and questioning the car's occupants.

¶ 13    Whether Officer Spinelli immediately recognized the legal effect of the tag's placement is neither here nor there: the inquiry is an objective one based on the *facts* known by the officer. Therefore, we don't need to address Miller's contention that the district court erred by finding that Officer Spinelli "was not sure if she could exactly remember the location of where a temporary tag should be at the time she made the stop."

¶ 14    *People v. Redinger*, 906 P.2d 81 (Colo. 1995), on which Miller relies, doesn't dictate a contrary conclusion. As the division recognized in *Hayes*, in *Redinger*, "there was no issue regarding the *location* of the temporary plate." *Hayes*, ¶ 15. That is, the location of the temporary tag in *Redinger* didn't violate the law in effect at the time.

¶ 15 We therefore conclude that the district court didn't err by denying the motion to suppress.

### B. Sufficiency of the Evidence

¶ 16 Miller challenges the sufficiency of the evidence that she possessed the requisite amount of fentanyl with intent to sell or distribute to constitute a level 2 drug felony. She argues that the prosecution was required to prove that the fentanyl weighed more than four grams to prove that she committed a level 2 drug felony. *See* § 18-18-405(1), (2)(b)(I)(D), C.R.S. 2024.[2]

¶ 17 Miller focuses primarily on the testimony of the forensic chemist who tested the substances found as a result of the traffic stop. There were "light blue round tablets" in a bag, separated into four baggies within the larger bag. They all shared the same color, size, shape, and imprint. The chemist tested one of the tablets from a baggie containing 100 tablets and determined that it contained fentanyl. The 100 tablets collectively weighed 11.05 grams. All

---

[2] The People assert, and Miller doesn't appear to dispute, that the weight affects only the offense level: the basic charge of possession with intent to sell or distribute can be proved with proof of any amount of a controlled substance.

tablets from all four baggies collectively weighed about thirty-five grams.[3]

¶ 18　　Miller argues that this evidence was insufficient because the prosecution didn't present any evidence of the weight of the fentanyl itself and the jury could only speculate that the other tablets contained fentanyl.  These arguments fail.

## 1.　Standard of Review

¶ 19　　In reviewing a challenge to the sufficiency of the evidence, we consider the evidence, both direct and circumstantial, as a whole and in the light most favorable to the verdict.  We ask whether the evidence is substantial and sufficient to support a conclusion by reasonable jurors that the defendant is guilty of the charged offense beyond a reasonable doubt.  *People v. Phillips*, 219 P.3d 798, 800 (Colo. App. 2009).  This inquiry requires us to give the prosecution the benefit of all reasonable inferences that might fairly be drawn from the evidence.  *Id.*  But such inferences must be supported by a "logical and convincing connection between the facts established

---

[3] The chemist also tested two other substances which came back positive for fentanyl, but it appears that the prosecution didn't rely on those test results to support this charge.

8

and the conclusions inferred." *People v. Donald*, 2020 CO 24, ¶ 19 (quoting *People v. Perez*, 2016 CO 12, ¶ 25).

¶ 20 We also must keep in mind when determining the sufficiency of the evidence that the law doesn't make any distinction between direct and circumstantial evidence; rather, jurors may draw reasonable inferences from both direct and circumstantial evidence. *Id.* at ¶ 27; *see also People v. Bennett*, 515 P.2d 466, 469 (Colo. 1973); *People v. Chase*, 2013 COA 27, ¶ 50 ("If there is evidence upon which one may reasonably infer an element of the crime, the evidence is sufficient to sustain that element.").

### 2. Analysis

¶ 21 Subsections (1)(a) and (2)(b)(I)(D) of section 18-18-405 provide that a person commits a level 2 drug felony if she possesses with intent to sell or distribute "any material, compound, mixture, or preparation that weighs . . . [m]ore than four grams, but not more than fifty grams, and contains fentanyl." This plainly means that the weight of the mixture, not the fentanyl, must be between more than four grams and fifty grams. So long as a mixture weighing that much "contains" fentanyl, the offense is a level 2 drug felony. *See People v. Woodyard*, 2023 COA 78, ¶ 57 (if the language of a

9

statute is clear and unambiguous, we enforce it as written); *see also*
*People v. Reeves*, 252 P.3d 1137, 1139-40 (Colo. App. 2010) (so
construing similarly worded former subsections (2)(a), (2.3), and
(3)(a) of section 18-18-405).

¶ 22    Thus, to the extent Miller contends that the prosecution failed
to prove she possessed more than four grams of fentanyl itself, that
contention fails because its premise — that the statute requires
proof of the weight of the controlled substance — is incorrect.  The
prosecution has to prove the weight of the mixture containing
fentanyl.[4]

¶ 23    To the extent Miller contends that the prosecution failed to
prove a mixture weighing more than four grams and containing
fentanyl, that contention also fails.  Contrary to Miller's assertion,

---

[4] In her reply brief, Miller suggests that interpreting the statute this way would create a due process problem.  Her argument on this point isn't entirely clear.  In any event, the statute clearly puts people on notice of the prohibited amount of a mixture and what such a mixture may not contain.  *See People v. Hickman*, 988 P.2d 628, 643 (Colo. 1999) (discussing how a vague statute may violate due process).  To the extent her contention is based on the assumption that the prosecution must prove "the quantity of a controlled substance," it fails because, as discussed, the prosecution is required to prove the weight of the mixture containing a controlled substance, not the weight of the controlled substance itself.

the jury's determination that the prosecution proved this fact didn't rest on "mere speculation" just because the chemist tested only one of the blue tablets. The 100 tablets in the baggie from which the randomly selected tested tablet was taken — weighing about eleven grams in total — were identical and were found in the same place and package. This baggie was one of four baggies of tablets, weighing a collective thirty-five grams, that were found in the same larger bag. An expert testified that since 2018, law enforcement had seen tablets containing fentanyl marketed in this form. Further, Miller wrote a letter, which was admitted into evidence, saying she "got hemmed up . . . and they found about 380 pills (34.8 [grams])."

¶ 24     True, much of the case was based on circumstantial evidence and inferences. But as discussed, such evidence may be sufficient. From the evidence presented, the jury reasonably could have inferred that the blue tablets that weren't tested contained fentanyl and that Miller therefore possessed at least more than four grams of a mixture containing fentanyl.

## C. Lesser Included Offense

¶ 25    Lastly, Miller contends that the district court erred by refusing to give the jury a proper lesser included offense instruction. Defense counsel requested that the court instruct the jury on simple possession of fentanyl, a lesser included offense of possession with intent to sell or distribute a controlled substance. The court gave the jury an instruction on the lesser included offense and gave it a verdict form for that offense. But on appeal, Miller contends that the court should have given an instruction telling the jury that simple possession is a lesser included offense of possession with intent to sell or distribute and that it could not convict Miller of both — a so-called "bridge instruction."

¶ 26    We conclude that this contention is waived. In the discussion between the court and counsel concerning the lesser included offense instruction, defense counsel initially asked the court to include "some kind of either-or language," which would say, "[I]f you do not find [Miller] guilty of possession with intent to distribute, then do you find [her] guilty of possession?" But as the discussion continued, it became clear that defense counsel's concern was that without such language, the jury could find Miller guilty of both.

12

After the court said that if the jury found Miller guilty of both, it would merge the lesser included offense into the greater, defense counsel indicated that this merger would alleviate the defense's concern. Ultimately, the court and the parties settled on instructions for the elements of possession with intent to "dispense, sell, or distribute" and simple possession, and separate verdict forms — 1 and 1A — for possession with intent and simple possession. The court said, without objection by defense counsel, "I think we have worked through the ways that those were done is acceptable." (The "those" to which the court was referring were the elemental instruction for possession with intent and verdict forms 1 and 1A.)

¶ 27 Because defense counsel ultimately agreed to the way the court intended to instruct the jury on the greater and lesser included offenses, any challenge to the sufficiency or form of the relevant instructions and verdict forms was waived. This isn't a case of counsel merely failing to object to a course of action that wasn't on defense counsel's radar. Rather, defense counsel actively participated in the discussion of how the jury should be instructed and ultimately agreed to the court's proposed course of action.

That is a waiver. *See People v. Carter*, 2021 COA 29, ¶¶ 30-33; *see also People v. Garcia*, 2024 CO 41M, ¶¶ 45-53. Because this claim of error is waived, we may not review its merits. *Garcia*, ¶ 28.

## III. Disposition

¶ 28 The judgment of conviction is affirmed.

JUDGE KUHN and JUDGE MOULTRIE concur.