1
 2024 CO 73 The People of the State of Colorado, Plaintiff-Appellant: v. Travis Roland Barnett. Defendant-Appellee: No. 24SA168
Supreme Court of Colorado, En Banc
December 9, 2024
 
          
 Interlocutory Appeal from the District Court Adams County
 District Court Case No. 23CR3152 Honorable Jeffrey D. Ruff,
 Judge
 
 
          
 Attorneys for Plaintiff-Appellant: Brian S. Mason, District
 Attorney, Seventeenth Judicial District Cameron Munier,
 Senior Deputy District Attorney Todd Bluth, Senior Deputy
 District Attorney Brighton, Colorado
 
 
          
 Attorneys for Defendant-Appellee: Megan A. Ring, Public
 Defender James Beck, Deputy Public Defender Brighton,
 Colorado
 
 
          
 JUSTICE BOATRIGHT delivered the Opinion of the Court, in
 which CHIEF JUSTICE MARQUEZ, JUSTICE HOOD, JUSTICE GABRIEL,
 JUSTICE HART, JUSTICE SAMOUR, and JUSTICE BERKENKOTTER
 joined.
 
 
          
 ORDER
 
 2
 
          
 BOATRIGHT, JUSTICE,
 
 
          ¶1
 The Fourth Amendment forbids law enforcement from conducting
 an investigatory stop based on a mere hunch that crime is
 afoot. See People v. Wheeler, 2020 CO 65, ¶ 13,
 465 P.3d 47, 52 (citing Terry v. Ohio, 392 U.S. 1,
 27 (1968)). In this case, the district court suppressed
 evidence because it found that deputies executed an
 investigatory stop of a vehicle based on a mere hunch. But
 the deputies initiated the stop only after learning that the
 vehicle's license plates were registered to a different
 vehicle. Because this constitutes reasonable suspicion rather
 than a mere hunch, we reverse the district court's order
 concluding that the stop was unlawful.
 
 
          ¶2
 Additionally, as part of the investigatory stop, the deputies
 commanded both occupants to exit the vehicle. Because
 deputies may, for their own safety, give a command to exit a
 vehicle during an investigatory stop, we also reverse the
 district court's determination that the deputies'
 command was unlawful.
 
 
          ¶3
 Finally, during the encounter, the deputies observed a glass
 pipe in Travis Barnett's vehicle and identified it as
 drug paraphernalia. The manner in which the deputies
 discovered the glass pipe is unclear.[1] Because we conclude that
 both the
 
 3
 
 initial stop and the subsequent order to exit the vehicle
 were lawful, on remand the trial court will need to make
 additional findings regarding how the deputies discovered the
 pipe and further rulings on the propriety of the search.
 
 
          ¶4
 Accordingly, we hold that a license plate registered to a
 different vehicle provides reasonable suspicion of motor
 vehicle theft and thus justified the investigatory stop
 conducted here. Additionally, we hold that under these facts,
 the command to exit the vehicle was justified. Therefore, we
 reverse the district court's suppression order and remand
 the case for the district court to make factual findings and
 conclusions of law regarding the discovery of the glass pipe
 that are consistent with this opinion.
 
 
          I.
 Facts and Procedural History
 
 
          ¶5
 Deputy Alvarado patrolled a motel parking lot because he
 believed it was a hot spot for crime. There, he spotted a red
 2002 GMC Yukon, a model of car that he testified is commonly
 stolen. He then drove by the Yukon and became suspicious when
 its two occupants looked away. Deputy Alvarado did not
 initiate any contact at this time; instead, he ran a check on
 the Yukon's license plates and discovered that they were
 registered to a black 2013 Ford.
 
 
          ¶6
 Deputy Alvarado then coordinated with his colleague, Deputy
 Mohr, to conduct an investigatory stop on the parked Yukon.
 Deputy Alvarado's bodycam captured these events: The
 deputies pulled their patrol cars up on either side of
 
 4
 
 the Yukon before rapidly approaching on foot. They ordered
 both the driver, Barnett, and the passenger to put their
 hands up, and then Deputy Alvarado informed Barnett that the
 plates did not match the Yukon. Barnett responded, "I
 just bought this yesterday," and began lowering his
 hands. Deputy Alvarado stopped him by replying,
 "Don't reach for nothing." He then ordered
 Barnett to keep his hands up and asked whether Barnett had
 any weapons. Barnett responded that he did not. Next, Deputy
 Alvarado ordered Barnett to exit the Yukon. Once Barnett was
 out of the car, Deputy Alvarado conducted a pat-down of
 Barnett and then ordered him to wait at the front bumper of
 one of the patrol cars. Deputy Mohr ordered the passenger to
 join Barnett.
 
 
          ¶7
 Deputy Alvarado asked Barnett if he had a bill of sale for
 the Yukon, and Barnett answered that both the bill of sale
 and the title were "somewhere in the back" of the
 Yukon. Barnett then attempted to return to the Yukon, but
 Deputy Alvarado ordered him to stop, explaining that Barnett
 could not access the car because he did not trust Barnett or
 know if there were weapons in the car. Deputy Mohr then
 interjected, "I'll be honest with you, dude.
 You've got meth pipes in-we're going to search the
 car. Just tell him where the title's at." Barnett
 then pointed the deputies to the title, disclosing that it
 was under items on the front floorboard.
 
 5
 
          ¶8
 Deputy Alvarado retrieved the title from the passenger side
 of the car. After running the Yukon's title documents
 through the computer in his patrol car (and finding that the
 Yukon had not been reported stolen), Deputy Alvarado informed
 Barnett that he was going to search the car because he had
 seen a pipe that resembled drug paraphernalia.[2] During the
 search, he found a glass pipe containing drug residue that
 was "not marijuana"; he later testified that such a
 pipe is commonly used to smoke methamphetamine and other
 controlled substances. Under the driver's seat, Deputy
 Alvarado also found cash and plastic bags containing what
 appeared to be substantial amounts of methamphetamine.
 
 
          ¶9
 Subsequently, the People charged Barnett with possession with
 intent to manufacture or distribute a controlled substance,
 criminal impersonation,[3] and obstructing a peace officer.
 Barnett moved to suppress the evidence collected as a result
 of the stop. Following a hearing, the district court granted
 the motion. The court determined that the deputies' stop
 was predicated on a mere hunch and that
 
 6
 
 both Alvarado's command to exit the vehicle and his
 pat-down of Barnett were unjustified. Thus, the court
 concluded that the subsequent search was
 illegal.[4]
 
 
          ¶10
 The People then filed this interlocutory appeal. They concede
 that Deputy Alvarado lacked a reasonable basis for his
 pat-down search of Barnett, but they contest two of the
 district court's rulings: that Deputy Alvarado lacked
 reasonable suspicion to conduct an investigatory stop and
 that the deputies impermissibly commanded Barnett and the
 passenger to exit the vehicle during the stop.
 
 
          II.
 Analysis
 
 
          ¶11
 We begin by addressing this court's jurisdiction and the
 standard of review. We then assess the deputies' actions
 and conclude that the mismatched license plates justified the
 investigatory stop. Additionally, we consider whether the
 command to exit the vehicle was justified and conclude that,
 under the circumstances, it was.
 
 
          A.
 Jurisdiction and Standard of Review
 
 
          ¶12
 "Under section 16-12-102(2), C.R.S. (202[4]), and C.A.R.
 4.1(a), the People may file an interlocutory appeal from a
 district court's order granting a defendant's motion
 to suppress evidence." People v. Johnson, 2024
 CO 47, ¶ 21,
 
 7
 
 549 P.3d 1008, 1013. Here, it is undisputed that the People
 properly certified this interlocutory appeal.
 
 
          ¶13
 We review an order suppressing evidence as a mixed question
 of fact and law. People v. Dacus, 2024 CO 51, ¶
 23, P.3d . We accept the trial court's findings of fact
 so long as they are supported by competent evidence. Id.
 But see People v. Bohler, 2024 CO 18, ¶ 17, 545
 P.3d 509, 514 (noting that "we may independently review
 recordings including police bodycam footage").
 We assess the legal significance of the facts de novo.
 Dacus, ¶ 23.
 
 
          B.
 The License Plate Discrepancy Provided Deputy Alvarado with
 Reasonable Suspicion of Motor Vehicle Theft
 
 
          ¶14
 "[A] police officer may conduct a brief investigatory
 stop without violating an individual's constitutional
 rights, so long as the officer can articulate 'a
 reasonable suspicion of criminal activity.'"
 People v. Moreno, 2022 CO 19, ¶ 14, 507 P.3d
 1005, 1008 (quoting People v. Brown, 2019 CO 63,
 ¶ 10, 461 P.3d 1, 3). Reasonable suspicion requires
 "more than a mere generalized suspicion or hunch."
 Wheeler, ¶ 13, 465 P.3d at 52. It demands
 "a specific and articulable basis in fact for suspecting
 that criminal activity has occurred, is taking place, or is
 about to take place." Brown, ¶ 10, 461
 P.3d at 3 (quoting People v. Perez, 690 P.2d 853,
 855 (Colo. 1984)). To determine if a deputy's suspicion
 was reasonable, we analyze the totality of the information
 available to the deputy, and we consider whether rational
 inferences from those facts indicate criminal activity and
 thus justify the
 
 8
 
 deputy's intrusion into the defendant's privacy.
 Moreno, ¶ 15, 507 P.3d at 1008; People v.
 Threlkel, 2019 CO 18, ¶ 19, 438 P.3d 722, 727.
 
 
          ¶15
 Barnett argues that Deputy Alvarado possessed only the
 "barest hunch" that the Yukon might be stolen. We
 disagree. Deputy Alvarado discovered that the license plates
 on the Yukon were registered to a different vehicle, and such
 a discrepancy presents a reasonable suspicion that the motor
 vehicle may be stolen. See § 18-4-409(3)(e),
 C.R.S. (2024) (providing that a person commits second degree
 motor vehicle theft when they knowingly obtain another's
 vehicle without authorization and "unlawfully attach[]
 or display[] a license plate . . . other than those plates
 officially issued for the motor vehicle"). Mismatched
 plates are as suspicious as missing registration papers,
 which provide reasonable suspicion. See People v.
 H.J., 931 P.2d 1177, 1181 (Colo. 1997).
 
 
          ¶16
 Therefore, because Deputy Alvarado possessed reasonable
 suspicion of criminal activity, he was authorized to initiate
 the investigatory stop.
 
 
          C.
 Concern for the Deputies' Safety Justified the Command to
 Exit the Vehicle
 
 
          ¶17
 During an investigatory stop, deputies may order drivers and
 passengers to exit vehicles, which possess a unique potential
 for escape and concealment of weapons, so long as the order
 constitutes a reasonable safety precaution. Maryland v.
 Wilson, 519 U.S. 408, 412-14 (1997) (citing
 Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977)
 (describing an officer's order to vacate a vehicle during
 a
 
 9
 
 lawful investigatory stop as "at most a mere
 inconvenience . . . when balanced against legitimate concerns
 for the officer's safety")). And while restraints on
 a person's liberty during an investigatory stop must be
 reasonable, deputies are not obliged to employ the least
 intrusive means possible. People v. White, 2023 CO
 43, ¶ 53, 531 P.3d 397, 408.
 
 
          ¶18
 Here, the district court determined that the command to exit
 was not reasonable-and, therefore, its fruits required
 suppression-because "peace officers [cannot] remove
 people from their cars, when there is no reasonable belief
 that a defendant is armed and dangerous, for the mere purpose
 of getting a better look at the contents of the car that may
 not otherwise be in plain view while the car is
 occupied." The district court hinged its reasoning on
 People v. Sandoval, No. 20CA1285 (Jan. 11, 2024),
 which pertained to evidence obtained from a pat-down.
 
 
          ¶19
 Although we agree (and the People concede) that the
 pat-down of Barnett was improper, pat-downs demand
 greater justification than exit orders. Pat-downs, during
 which a deputy touches a person's body, are more invasive
 than the "mere inconvenience" of being ordered to
 briefly exit a stopped vehicle. See Mimms, 434 U.S.
 at 111. Therefore, to conduct a pat-down, a deputy must have
 "an articulable and objectively reasonable belief"
 that the person "is armed and dangerous."
 Johnson, ¶ 27, 549 P.3d at 1014. By contrast,
 orders to exit a vehicle
 
 10
 
 during an investigatory stop do not constitute an additional
 seizure and thus do not require a deputy to reasonably
 believe that the passengers are armed and dangerous. See
 People v. Harmon, 2019 COA 156, ¶ 23, 461 P.3d 618,
 623; see also People v. Chavez-Barragan, 2016 CO 66,
 ¶ 29, 379 P.3d 330, 337 (citing People v.
 Carlson, 677 P.2d 310, 312 (Colo. 1984) ("We
 conclude that a police officer in the course of a valid
 traffic stop may order the driver to get out of the car and
 walk to the rear of the vehicle ....")). Therefore, the
 order that the occupants exit the car was lawful.
 
 
          D.
 Further Findings Necessary
 
 
          ¶20
 Finally, although we have determined that both the initial
 stop and subsequent exit command were lawful, we cannot
 conclude from the existing record whether the motion to
 suppress should have been granted. That is because it is
 unclear exactly how the deputies discovered the
 glass pipe-the ultimate evidence at issue in this case. Was
 it in plain view when Barnett and his passenger left the
 vehicle? Or did the deputies' search of the vehicle
 reveal the pipe? If the latter, at what point in the search
 did the pipe emerge? How the deputies discovered the pipe
 impacts the legality of the search. See People v.
 Alameno, 193 P.3d 830, 834 (Colo. 2008) (citing
 People v. Pitts, 13 P.3d 1218, 1222 (Colo. 2000))
 ("[E]vidence that is not supported by a valid search
 warrant may still be admissible if it falls under one of
 several exceptions to the warrant requirement,
 
 11
 
 such as the plain view exception."). Accordingly, on
 remand, the trial court should make further findings
 regarding the discovery of the glass pipe and then decide,
 consistent with those findings, whether the evidence must be
 suppressed.[5]
 
 
          III.
 Conclusion
 
 
          ¶21
 We hold that a license plate registered to a different
 vehicle provides reasonable suspicion of motor vehicle theft
 and thus justified the investigatory stop here. Additionally,
 we hold that under these facts, the command to exit the
 vehicle was justified. Accordingly, we reverse the
 suppression order and remand this case to the district court
 with instructions to make factual findings and conclusions of
 law regarding the discovery of the glass pipe that are
 consistent with this opinion.
 
 
 ---------
 
 
 Notes:
 
 
 [1] Understandably, the district court did
 not make credibility determinations on this issue after
 deciding that everything discovered during the search was
 fruit of the poisonous tree.
 
 
 [2] It is unclear when and how the
 deputies first observed the glass pipe. The bodycam footage
 shows the pipe for the first time during the search and, at
 that time, it is on the floor in front of the driver's
 seat. But it is unclear from the record whether this was when
 and where the deputies first discovered it.
 
 
 [3] Barnett identified himself by a first
 name other than Travis during the investigatory stop.
 
 
 [4] Presumably, the trial court did not
 make any factual findings regarding the search of the car
 because it found that the stop was unjustified.
 
 
 [5] To be clear, we are not directing the
 trial court to return this matter to this court after it
 makes its conclusion about the search of the car.
 
 
 ---------