22CA1228 Peo v Brehm 02-13-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1228
Mesa County District Court No. 20CR465
Honorable Richard T. Gurley, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Matthias Martin Brehm,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE SCHOCK
Freyre and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 13, 2025

Philip J. Weiser, Attorney General, Austin R. Johnston, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Tillman Clark, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Matthias Martin Brehm, appeals his judgment of conviction on several counts, including a felony count of attempted second degree aggravated motor vehicle theft.  He contends that the district court erred by (1) denying his motion to suppress; (2) giving an improper illustration of a defendant's right to remain silent during voir dire; (3) admitting photographs of Brehm in handcuffs on the night of his arrest; and (4) admitting a minimally redacted copy of Brehm's driving record.  We affirm the judgment.

## I.     Background

¶ 2     The charges in this case stem from a break-in at a vehicle lot owned by All-Terrain Motor Sports (ATM), which was surrounded by a chain-link fence and secured by a locked gate.  Around 11:30 p.m. on the night of the break-in, the owner of ATM called police after receiving an alert that the alarm for the vehicle lot had been triggered.  Surveillance video showed someone inside the fenced lot, and a motorcycle had been moved to the east side of the lot.

¶ 3     When police arrived, they found a hole in the east side of the fence, big enough for a person to go through.  Minutes later, they heard a car engine start in the neighboring business complex to the east — about two minutes' walking distance across a grassy area

from the hole in the fence. They also found an ATM decal on the ground just outside the fence. The vehicle lot was in a commercial business area, and all the surrounding businesses were closed.

¶ 4 The officers saw the car pull out of the business complex parking lot and drive away. Other officers then stopped the car at the direction of the officers on scene. The driver identified himself as Brehm. In the meantime, an officer viewed the ATM surveillance footage, which showed the person inside the lot wearing a black jacket over a maroon shirt and baggy jeans — the same clothing Brehm was wearing when he was stopped (minus the jacket, which was in the back seat). Brehm was arrested and officers searched his car, finding several items tying him to the ATM break-in.

¶ 5 Brehm was charged with nine counts, including a felony count of attempted second degree aggravated motor vehicle theft and several other misdemeanor, traffic, and petty offenses.

¶ 6 Brehm moved to suppress all evidence obtained as a result of the stop of his vehicle on the ground that the officers did not have reasonable suspicion to stop him. After an evidentiary hearing, the district court denied the motion, concluding that officers had reasonable suspicion to conduct an investigatory stop. It explained:

> Law enforcement responds after 11:30 at night to a commercial district where all the businesses in that area are . . . closed.
>
> The officers see no other traffic in the area, no other people in the area. They observe the hole in the fence.
>
> And shortly after they arrive . . . they hear a vehicle start up just from the east of the location. . . . [T]here's no other explanation for why they would be there . . . .
>
> It's reasonable, in the court's view, to stop the vehicle briefly for investigation.

¶ 7 At trial, the prosecution dismissed three of the misdemeanor counts, and the district court granted Brehm's motion for judgment of acquittal on a count of driving under restraint because the prosecution failed to prove that Brehm knew his license had been revoked. The jury convicted Brehm on all remaining counts.

## II. Motion to Suppress

¶ 8 Brehm argues that the district court erred by denying his motion to suppress the fruits of the stop because the officers did not have reasonable suspicion to stop him. We disagree.

### A. Standard of Review and Applicable Law

¶ 9 A suppression order presents a mixed question of fact and law. *People v. Brown*, 2019 CO 63, ¶ 8. We accept the district court's

3

factual findings if they are supported by competent evidence, but we review the application of the law to those facts de novo. *Id.*

¶ 10     Both the United States and Colorado Constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Colo. Const. art. II, § 7. But "[p]olice officers may conduct a brief investigatory stop if they are 'operating with a reasonable suspicion of criminal activity.'" *Brown*, ¶ 10 (citation omitted). Reasonable suspicion is "a specific and articulable basis in fact for suspecting that criminal activity has occurred, is taking place, or is about to take place." *People v. Barnett*, 2024 CO 73, ¶ 14 (citation omitted).

¶ 11     In determining whether an officer had reasonable suspicion to conduct an investigatory stop, we look to the "totality of circumstances, keeping in mind that '[a]n officer is entitled to draw reasonable inferences from all the circumstantial evidence "even though such evidence might also support other inferences."'" *Brown*, ¶ 11 (citation omitted). Some considerations that may be relevant to that analysis, depending on the context, include

> (1) the particularity of the description of the offender or the vehicle in which he fled; (2) the size of the area in which the offender might be found, as indicated by such facts as the elapsed time since the crime occurred; (3) the

number of persons about in that area; (4) the known or probable direction of the offender's flight; (5) observed activity by the particular person stopped; and (6) knowledge or suspicion that the person or vehicle stopped has been involved in some criminality of the type presently under investigation.

*Id.* (citation omitted). But these considerations are not exhaustive or dispositive. *Id.* at ¶¶ 11, 13. Instead, they inform our consideration of the "totality of the circumstances." *Id.* at ¶ 13.

### B. Analysis

¶ 12 Brehm characterizes the relevant circumstances in this case as nothing more than "the sound of a lone car engine starting at night, near the scene of an alleged trespass." But that is not all there was. Taking into account the totality of the circumstances, and allowing for reasonable commonsense inferences, we conclude that the officers had reasonable suspicion to stop Brehm's vehicle.

¶ 13 Brehm does not dispute that officers had at least reasonable suspicion that a crime had been committed at the ATM lot. In investigating that crime, officers found a hole in the perimeter fence large enough for a person to go through and an ATM decal just outside the fence, giving officers a specific and articulable basis for believing that the suspect had exited the lot through that hole. On

the other side of the hole was a grassy area and then a business complex. It was late at night in a commercial area, and everything was closed. And no other people or vehicles were in the area.

¶ 14    It was in that context that officers heard a car engine start in the business complex parking lot — directly across the grassy area, just a two-minute walk from the likely exit location. Thus, it was not simply the sound of a car engine near the scene. It was the sound of a car engine starting minutes after police arrived in the direction in which there was reason to believe the suspect had fled. And as in *Brown*, Brehm was "the only person in the area." *Brown*, ¶ 14; *see also People v. Funez-Paiagua*, 2012 CO 37, ¶ 12 (concluding there was reasonable suspicion where the defendant was on the property of a closed business late at night when "no other businesses were open and there were no other people nearby"). Taking these facts together, it was reasonable for officers to "deduce that the person driving the car away from the [area] where the incident had just been reported may have been involved in it." *People v. Jiron*, 2020 COA 36, ¶ 47, *cert. granted, judgment vacated on other grounds, and case remanded*, No. 20SC344, 2021 WL 96460 (Colo. Jan. 11, 2021) (unpublished order).

¶ 15　　Brehm attempts to distinguish *Brown* and *Jiron* by arguing that "the size of the area in which the offender might be found" was enormous and the "known or probable direction of the offender's flight" was unknown. *Brown,* ¶ 11 (citation omitted). But these arguments overlook the significance of the person-sized hole in the fence perimeter. As noted above, that hole gave officers a reasonable basis to infer the "probable direction of the offender's flight" was through that hole, i.e., toward the business complex. *Id.*

¶ 16　　That probable direction of flight also limited the area in which the offender was likely to be found. Even if the offender *could* have fled in any direction after exiting the vehicle lot, it made sense that within the first five minutes after police arrived, the offender would be found in the direction of the flight, and likely not too far away. *Cf. People v. Mascarenas,* 666 P.2d 101, 108 (Colo. 1983) (holding there was reasonable suspicion where officer stopped vehicle fifteen to twenty minutes after police broadcast seventeen miles away from crime scene in probable direction of flight, "consistent with the amount of time normally required to travel" that distance). And regardless, Brehm was not found far away; he was found a two-minute walk away — the only one in the area. *See Brown,* ¶ 14.

7

¶ 17    The other factors cited in *Brown* and relied on by Brehm do not change our conclusion.  First, although officers had no description of the offender or his vehicle, that is not dispositive.  *Id.* at ¶ 13; *see also Jiron*, ¶ 47 (concluding there was reasonable suspicion without a description of the suspect).[1]  Second, although Brehm asserts that there were residential neighborhoods and a freeway nearby, he concedes there were no other persons "about in that area."  *Brown*, ¶ 11 (citation omitted).  Third, Brehm points out that officers did not observe him engaging in any unlawful or suspicious conduct and had no direct knowledge that he had been involved in illegal activity.  *See id.*  But such direct observation is not required, given the circumstantial evidence described above.

¶ 18    Brehm stresses that there could be innocent explanations for an individual sitting in a car alone late at night in the parking lot of a closed business.  We agree.  But an innocent explanation does not defeat reasonable suspicion.  *Id.* at ¶ 15; *see also People v. Reyes-*

---

[1] Although officers obtained a physical description of the suspect and confirmed that Brehm matched that description *after* the stop, we may only consider facts known to police at the time of the stop. *See People v. Jiron*, 2020 COA 36, ¶ 48, *cert. granted, judgment vacated on other grounds, and case remanded*, No. 20SC344, 2021 WL 96460 (Colo. Jan. 11, 2021) (unpublished order).

*Valenzuela*, 2017 CO 31, ¶ 14.  To the contrary, the reasonable suspicion analysis turns on "the degree of suspicion that attaches to . . . noncriminal acts."  *Reyes-Valenzuela*, ¶ 13 (citation omitted); *see also United States v. Sokolow*, 490 U.S. 1, 10 (1989) ("[I]nnocent behavior will frequently provide the basis for a showing of probable cause . . . .") (citation omitted).  And officers may draw appropriate inferences from otherwise innocent activity, even if such activity might also support other inferences.  *Reyes-Valenzuela*, ¶ 14.

¶ 19     In the end, reasonable suspicion is a commonsense inquiry based on the totality of the circumstances.  *See Illinois v. Wardlow*, 528 U.S. 119, 125 (2000); *People v. Huynh*, 98 P.3d 907, 912 (Colo. App. 2004).  Viewing the facts in their totality, we agree with the district court that officers had reasonable suspicion to stop Brehm.  The district court therefore correctly denied the motion to suppress.

### III.   "Cookie Crumbles" Illustration During Voir Dire

¶ 20     Brehm next contends that the district court reversibly erred during voir dire by telling a story about a child confronted by a parent about eating cookies to illustrate the right to remain silent.  Brehm asserts that this illustration lowered the prosecution's

burden of proof and violated his right to remain silent, his presumption of innocence, and his right to a fair trial. We disagree.

## A.    Additional Background

¶ 21    At the beginning of voir dire, the district court instructed the jury that (1) Brehm "enjoys the presumption of innocence [that] stays with him throughout the trial"; (2) the prosecution has the burden of proving every element of each charge beyond a reasonable doubt; and (3) anyone accused of a crime, including Brehm, has a "precious and absolute right . . . to remain silent." The court elaborated that Brehm "cannot be compelled to testify," and if he does not testify, "that is not proof of anything."

¶ 22    Later in voir dire, the district court returned to those concepts and confirmed the jury understood them. In doing so, the district court gave what it called an example of the right to remain silent:

> When we talk about how you like to hear both sides of the story, that's just human nature. You know, you have — so any of you have small children, or had small children at one point?
>
> So I give the example of say, say it's a holiday time and you're going to bake some cookies for the holidays. And you tell your two kids, I don't want you to touch these cookies. They're

going to be for guests we're going to have over. Don't touch them.

You know, an hour later, you come downstairs and you see when one of your children looks perfectly normal. The other one has icing and all kinds of stuff around their mouth.

You see broken cookies crumble everywhere. And so, what do you do? You say, who did this? And your child who has no icing on their face says, not me. And the other one, you ask, did you do this? And what do they say to you? Judge Gurley says I have the absolute right to remain silent. I'm not going to tell you, right?

So, I mean, you know, in our everyday lives, we, we — you know, you, you hear both sides of the story. But in a criminal case, you can't hold it against someone who's accused if they exercise that constitutional right to remain silent. And you cannot use that as evidence in your deliberations.

And so, again, what do you do? You make your decision based upon the evidence that's been presented in the trial.

But you can't use someone's right to remain silent against them as evidence, because it's not evidence.

¶ 23    The district court then asked whether any of the prospective jurors had a problem with that concept, and no one indicated they did. Brehm's counsel did not object to the court's statements.

¶ 24    At the close of trial, the district court correctly instructed the jury on the prosecution's burden of proof beyond a reasonable doubt, the presumption of innocence, and the right not to testify.

### B.    Lowering the Burden of Proof

¶ 25    We first address Brehm's argument that the district court's illustration lowered the prosecution's burden of proof beyond a reasonable doubt because, if it did, it would constitute structural error and require reversal. *See Tibbels v. People*, 2022 CO 1, ¶ 22.

¶ 26    The United States Constitution "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  The reasonable doubt standard is "[i]ntrinsically related" to the presumption of innocence. *Tibbels*, ¶ 24.  In determining whether the district court's statements to the jury lowered the burden of proof, we apply a functional test, asking "whether there is a reasonable likelihood that the jury understood the court's statements, in the context of the instructions as a whole and the trial record, to allow a conviction based on a standard lower than beyond a reasonable doubt." *Id.* at ¶ 2.  We review this question de novo. *Id.* at ¶ 22.

¶ 27 We agree with Brehm that the district court's illustration raises some concerns. Most significantly, the only child to exercise their right to remain silent was the child who had apparently eaten the cookies, i.e., the guilty one. This risked the implication that only a guilty person will exercise the right. The story would have been less problematic, for example, if both children had appeared equally guilty or equally innocent, or if both children had exercised the right. Moreover, although the court did not directly compare Brehm to the child with icing on their face, Brehm was the only one who was accused of a crime and whose right to remain silent was at issue, which could have led jurors to infer that there must also be evidence against Brehm. *See Pettigrew v. People*, 2022 CO 2, ¶ 44.

¶ 28 But notwithstanding our concerns with the illustration itself, we do not think there is a reasonable likelihood that the jury understood the court's comments, in the context of the instructions and record as a whole, to lower the prosecution's burden of proof below the reasonable doubt standard. *See id.* at ¶ 46.

¶ 29 First, the court did not use the illustration to define reasonable doubt. *See Tibbels*, ¶ 25 (cautioning against "attempts by trial courts to define 'reasonable doubt' in ways beyond the long-

13

established pattern instructions"); *People v. Sanders*, 2022 COA 47, ¶ 49 (holding that analogies to puzzles and baking a cake were not improper "where there was no attempt to quantify the amount of proof necessary to solve the puzzle"), *aff'd on other grounds*, 2024 CO 33. Indeed, the challenged statements did not refer to the prosecution's burden or the reasonable doubt standard at all. Their express purpose was to illustrate the right to remain silent.

¶ 30   Second, before and after the problematic illustration, the court repeatedly instructed the jury with "clarity and succinctness . . . that the prosecution bore the burden of proving [Brehm's] guilt beyond a reasonable doubt." *Pettigrew*, ¶ 42. Immediately before the illustration, the court told the jurors that (1) they must "presume that Mr. Brehm is innocent"; (2) "[t]hat presumption can only be overcome if you're convinced that the prosecution has proven each element of these allegations beyond a reasonable doubt"; and (3) the accused has "no obligation to present any evidence at all." Then, immediately after the illustration, the court "mitigated the problematic implications of its statement[s]," *id.* at ¶ 45, by reiterating that the prosecution has the burden of proving "each element of [every] allegation by proof beyond a reasonable

14

doubt."  After the jury was empaneled, the court reminded the jury in "correct and clear terms" of the presumption of innocence and the prosecution's burden of proof beyond a reasonable doubt.  *Id.* at ¶ 42.  And in the final jury instructions, the court once again "correctly advised the jury" on each of those concepts.  *Id.*

¶ 31    Thus, considering the district court's statements in the context of the record as a whole, there is no reasonable likelihood that the jury understood those statements to lower the prosecution's burden of proof or supplant the presumption of innocence.  The comments therefore do not amount to structural error.  *See id.* at ¶ 46.

### C.    Right to Remain Silent

¶ 32    Brehm also argues that the illustration minimized and violated his right to remain silent by (1) characterizing the right as a permission given by the judge instead of a constitutional right and (2) implying that a person's exercise of the right is evidence of guilt.

¶ 33    To the extent this argument is distinct from Brehm's argument that the court's comments lowered the prosecution's burden of proof, we review it for plain error because Brehm did not object in the district court.  *See Hagos v. People*, 2012 CO 63, ¶ 14 (applying plain error review to unpreserved constitutional errors); *cf. Deleon v.*

15

*People*, 2019 CO 85, ¶ 29 (reviewing preserved argument that district court failed to properly instruct jury on the defendant's right to remain silent for harmless error, not structural error). Plain error is obvious and substantial error that "so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Hagos*, ¶ 18 (citation omitted). An error is obvious only if it "contravene[s] a clear statutory command, a well-settled legal principle, or established Colorado case law." *People v. Crabtree*, 2024 CO 40M, ¶ 42.

¶ 34    A district court's comments during the jury selection process can "have the effect of instructing the jury on the law to be applied." *Pettigrew*, ¶ 36. And the district court must correctly instruct the jury on the applicable law. *People v. Jones*, 2018 COA 112, ¶ 24. We review jury instructions de novo to determine whether it fulfilled that obligation. *McDonald v. People*, 2021 CO 64, ¶ 54. But as long as the instructions properly inform the jury of the law, the district court has broad discretion to determine their form and style. *Id.*

¶ 35    We first disagree that the district court improperly trivialized the right to remain silent by having the child in his example say "Judge Gurley says I have the absolute right to remain silent." To

16

the contrary, the district court called the right a "constitutional right" three times — including right after the "cookie crumbles" illustration — and twice characterized it as "precious and absolute." The court's framing of that right in this one instance in the words a child might use did not undermine the significance of the right.

¶ 36    Nor did the district court violate Brehm's right to remain silent by suggesting that it was "human nature" to want to "hear both sides of the story." As the supreme court has explained, it is reasonable for jurors to arrive for jury duty wanting to "hear both sides," and it is incumbent on the district court to rectify any potential misunderstanding by "explain[ing] the correct legal principles to jurors during voir dire." *People v. Clemens*, 2017 CO 89, ¶¶ 17, 21. That is what the court sought to do here by pointing out that the operation of the right to remain silent in the courtroom might be counterintuitive to what jurors might expect elsewhere.

¶ 37    As to Brehm's argument that the illustration implied that the exercise of the right to remain silent was evidence of guilt, we have recognized that, in and of itself, the illustration risked such an interpretation. But as with the reasonable doubt standard and the presumption of innocence, the court mitigated that risk by

17

immediately clarifying unequivocally that an exercise of the right to remain silent cannot be used as evidence. And as with the other concepts, the court did the same, clearly and correctly, before the illustration and in the final jury instructions. *See Pettigrew*, ¶ 42.

¶ 38 Given the district court's repeated admonition that a defendant's decision not to testify is "not proof of anything," we cannot conclude that the district court's statements, even if potentially problematic in isolation, violated Brehm's constitutional right to remain silent, when considered "in the context of the instructions as a whole and the entire record." *Tibbels*, ¶ 57.

¶ 39 Moreover, any potential defects in the illustration were neither obvious nor substantial. Brehm cites no case outside the reasonable doubt context in which such an illustration has been held to be error. *See Crabtree*, ¶ 42. And neither the court nor the parties ever mentioned the illustration again. In light of the court's repeated correct instructions on the right to remain silent and the lack of any reasonable likelihood that the jury misunderstood the right, the court's isolated illustration during voir dire did not so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *Hagos*, ¶ 18.

## IV.  Photographs

¶ 40  Brehm next asserts that the district court erred by admitting three photos of him in handcuffs on the night of the arrest.  The photos — taken while Brehm was in police custody — show Brehm from the back, right, and left with his hands cuffed behind his back.[2]  They were introduced to show Brehm's appearance and clothing when he was taken into custody and, more specifically, to establish that his clothing matched the clothing of the intruder on the surveillance footage.  We again discern no reversible error.

¶ 41  Because Brehm did not object to the admission of the photos at trial, we review their admission for plain error.  *See Hagos*, ¶ 14.  Relying on *Deck v. Missouri*, 544 U.S. 622, 635 (2005), Brehm argues that the constitutional harmless error standard applies.  But "[c]onstitutional harmless error analysis is reserved for those cases in which the defendant preserved his claim for review by raising a contemporaneous objection."  *Martinez v. People*, 2015 CO 16, ¶ 12 (citation omitted).  When a defendant did not object, we review for plain error, whether the error is constitutional or not.  *Hagos*, ¶ 14.

---

[2] A fourth photo from the front was also admitted in which Brehm's hands are behind his back and the handcuffs are not visible.

¶ 42    In any event, Brehm has not shown a constitutional violation. The Due Process Clause prohibits the use of physical restraints visible to the jury *in the courtroom* absent a case-specific justification. *Deck*, 544 U.S. at 629; *Hoang v. People*, 2014 CO 27, ¶ 13. That prohibition is not implicated by photographs showing the defendant restrained out of court. *See People v. Thames*, 2019 COA 124, ¶¶ 49-50 (holding that video of interrogation of defendant in prison clothing did not violate presumption of innocence).

¶ 43    Nor did the district court abuse its discretion, much less plainly err, by failing to exclude the photos under CRE 403. Under CRE 403, relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice. The district court has broad discretion to balance these competing considerations, and we will not disturb its ruling absent an abuse of discretion. *People v. Gibbens*, 905 P.2d 604, 607 (Colo. 1995). Because CRE 403 strongly favors the admissibility of relevant evidence, we afford the evidence its maximum reasonable probative value and the minimum unfair prejudice to be reasonably expected. *Id.*

¶ 44    The challenged photos were probative to show that Brehm's appearance and clothing at the time of his arrest matched the

appearance and clothing of the person on the surveillance footage, thus establishing Brehm's identity. *See People v. Forgette*, 2021 COA 21, ¶ 46 (holding that photos of the defendant while he was in custody were "substantially probative of identity"), *aff'd in part and vacated in part on other grounds*, 2023 CO 4; *see also People v. Elmarr*, 2015 CO 53, ¶ 28 ("In a criminal prosecution, identity is a material element of any charged crime."). In particular, an officer testified that the person in the surveillance footage was wearing a maroon shirt under a black jacket with "very baggie pants." In the photos, Brehm is wearing a maroon shirt and baggie pants.

¶ 45 Moreover, although booking photos are generally considered prejudicial, *Forgette*, ¶ 48, the risk of *unfair* prejudice was minimized because the jury had already learned through other testimony that Brehm was handcuffed when he was taken into custody. Thus, seeing him in handcuffs would not be a surprise. *See Thames*, ¶ 49 ("[M]ost jurors would not be surprised by the fact that a defendant was handcuffed . . . while in jail prior to trial.") (citation omitted). The photos were shown to the jury only briefly, and neither the prosecution nor the witness highlighted that Brehm was wearing handcuffs. *See id.* at ¶ 50 (reasoning that "the clothing

21

shown in a video lasting one hour and fourteen minutes will not . . . create a prejudicial, continuing influence in juror's minds").

¶ 46     Brehm points out that the photos were not edited, as they were in *Forgette*. *See Forgette*, ¶¶ 41, 48. But he does not explain how the photos could have been edited without undermining their probative value where their purpose was to show Brehm's entire outfit (shirt and pants), and his hands were at his waist. Nor did Brehm propose any such modification as a solution at trial.

¶ 47     Thus, giving the photos their maximum reasonable probative value and their minimum prejudicial effect, the district court did not abuse its discretion, much less plainly err, by admitting them.

## V.     Driving Record

¶ 48     Brehm's final argument is that the district court plainly erred by admitting a redacted copy of his driving record that contained various information that Brehm contends was prejudicial. We conclude that Brehm waived or invited this putative error by affirmatively agreeing to the admission of the record as redacted.

### A.     Additional Background

¶ 49     Brehm was originally charged with driving under restraint. At trial, the prosecution moved to admit a certified copy of Brehm's

driving record. Though saying he did not think he could object, Brehm's counsel argued that the record was "a bit more broad than [he'd] like to see," in that it included convictions from 2010 and 2018 that were irrelevant and unduly prejudicial. But he acknowledged that a portion of the record — a 2019 conviction for which Brehm's license was revoked — was "of course" relevant.

¶ 50    The district court asked the prosecution if it could redact the two convictions identified by Brehm's counsel, and the prosecution agreed. The court then asked Brehm's counsel if he had any other issues, and counsel said he did not. Counsel then volunteered that he would "be fine with having . . . the People admit[] it now on the basis of them redacting it before it goes back to the jury." With that agreement, the district court admitted the record. After the prosecution made the agreed-upon redactions, defense counsel confirmed that he had no objection to the redacted exhibit.

## B.    Analysis

¶ 51    We may not review a putative error on appeal that a party has waived or invited in the district court. *People v. Rediger*, 2018 CO 32, ¶¶ 34, 40. Waiver is the intentional relinquishment of a known right or privilege. *Id.* at ¶ 39. Invited error is an error that the

23

party "invited or injected into the case." *Id.* at ¶ 34. The doctrine applies when "a party requests that the court take a particular action" and the court does so, or when the party "expressly acquiesces to conduct by the court or the opposing party." *Horton v. Suthers*, 43 P.3d 611, 619 (Colo. 2002); *see also People v. Garcia*, 2018 COA 180, ¶ 7 (noting that the doctrine's application "is limited to situations where an error was caused by a party's affirmative, strategic conduct and not by a party's inaction or inadvertence").

¶ 52    Whether by waiver or invited error, we conclude that Brehm surrendered his challenge to the admission of the driving record when his counsel identified the potential overbreadth of the record and then affirmatively told the court that he was "fine" with it being admitted with the proposed redactions. Brehm did not merely fail to assert an objection or "generally acquiesce[]" to the record's admission. *Rediger*, ¶¶ 40, 42. Nor did he overlook the issue. *See id.* at ¶¶ 34-35. Instead, his counsel raised the specific issue, and when the court proposed a solution, he agreed that solution was appropriate and told the court he had no other objections.

¶ 53    By doing so, Brehm either intentionally relinquished any further objections or invited the error of which he now complains

24

and must "abide the consequences of his . . . acts." *Id.* at ¶¶ 34, 39; *see also People v. Quillen*, 2023 COA 22M, ¶¶ 49-54 (holding that defendant waived her objection to unredacted driving record by arguing that if the record was admitted, it should not be redacted); *People v. Kessler*, 2018 COA 60, ¶ 37 (holding that defendant waived objection to breath test results where "[d]efense counsel explicitly agreed that the specific evidence at issue was admissible").

¶ 54     Regardless, even if we were to conclude that Brehm did not waive this argument, there is no plain error where (1) the driving record was relevant to Brehm's knowledge that his license was under restraint, *People v. Arzabala*, 2012 COA 99, ¶ 87; (2) the record does not reflect that the exhibit was ever published to the jury; (3) nothing in the redacted exhibit was so prejudicial as to undermine the fundamental fairness of the trial; and (4) the prosecution never referred to the driving record or its contents, *see People v. Lahr*, 2013 COA 57, ¶ 24 (noting that inadmissible evidence is less prejudicial when the reference to it is fleeting). The subsequent dismissal of the driving under restraint charge does not erase the relevance of the record at the time it was admitted.

## VI.  Cumulative Error

¶ 55     Because we have concluded that there was no error at trial, we reject Brehm's argument that cumulative error deprived him of a fair trial.  *See Howard-Walker v. People*, 2019 CO 69, ¶ 25.

## VII.  Disposition

¶ 56     The judgment is affirmed.

JUDGE FREYRE and JUDGE SULLIVAN concur.