23CA0910 Peo v Regnier 03-05-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0910
Weld County District Court No. 22CR722
Honorable Meghan Patrice Saleebey, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Timothy Joseph Lloyd Regnier,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE DUNN
Moultrie and Hawthorne*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 5, 2026

---

Philip J. Weiser, Attorney General, Emmy A. Langley, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kamela Maktabi, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1      A jury convicted Timothy Joseph Lloyd Regnier of four counts of driving related crimes and one count of possession with intent to distribute a controlled substance.  Regnier appeals his conviction, arguing that the trial court reversibly erred by (1) denying his motion to suppress statements he made at the time of his arrest and (2) excluding statements his girlfriend made to the police.  We disagree and we affirm the judgment of conviction.

## I.      Background

¶ 2      One evening, Greeley Police Officer Kyle Penny saw a truck towing a camper trailer without taillights and with an expired license plate.  Officer Penny stopped the truck and asked the driver, Regnier, for his license and insurance.  Regnier admitted that he did not have a license and largely acknowledged the other traffic violations.  While speaking with Regnier, Officer Penny saw a broken meth pipe in the center console.  Officer Penny and a second officer, Kody Klassen, then ordered Regnier and the passenger — Regnier's girlfriend, Melissa Armstrong — to step out of the truck. Officer Penny handcuffed Regnier, found additional drug paraphernalia on him during a pat-down search, and placed him in a patrol car.  Armstrong remained outside the truck.

¶ 3     Officer Penny and Officer Klassen searched the truck and found a large quantity of methamphetamine, a variety of drug paraphernalia, plastic baggies, a scale, and cash inside two bags on the front passenger floorboard (below where Armstrong had been sitting).  The officers then arrested Armstrong.

¶ 4     After Officer Klassen told Regnier that Armstrong "was under arrest for narcotics possession," Regnier responded, "If there's anything in that truck it's mine," and "[Armstrong] doesn't fuck with that shit man, I'm the one that has that problem."  Officer Klassen reported these statements to Officer Penny.

¶ 5     Officer Penny then had the following exchange with Regnier while Regnier was handcuffed in the patrol car:

> Officer Penny: Do you want to talk to me about anything in the truck?
>
> Officer Penny: Do you want the windows down so you can cool off?
>
> Regnier: No.  Um —
>
> Officer Penny: Do you need an ambulance?
>
> Regnier: Anything in there, is mine.
>
> Officer Penny: Do you need an ambulance?
>
> Regnier: No.

Officer Penny: You're all super sweaty, dude.

Regnier: Yea, it's cuz —

Officer Penny: I want to make sure —

Regnier: Cuz he had the door open for a minute, and I got cooled off and then he closed it —

Officer Penny: Do you want me to open just one so you have a little bit of air flow?

Regnier: No, I'll be alright.

Officer Penny: Ok.

Regnier: But anything in that truck is mine. Anything in the bags, that shit's mine.

Officer Penny: Ok.  Are you on probation or parole or anything like that?

Regnier: No.  Just bond.

Officer Penny: Ok.  So all the cash and stuff like that is yours, too?

Regnier: Some of it's mine.

Officer Penny: Ok.  I'm just trying to figure out like who goes to what cuz there's like a pretty little purse with a bunch of money in it.

Regnier: Yea, I had, I know I had a bunch of meth and stuff, so.

Officer Penny: Ok.  I appreciate your honesty.

¶ 6    Officer Penny later returned to the patrol car and asked Regnier if a lockbox found in the truck was his and asked for the code. Regnier said that the box was his and gave Officer Penny the code. Officer Penny opened the box and found more drug paraphernalia, plastic baggies, and a scale.

¶ 7    The traffic stop, arrests, and truck search were captured on the officers' body cameras.

¶ 8    The prosecution charged Regnier with possession with intent to distribute a controlled substance, driving without compulsory insurance, driving under restraint, driving with expired license plates, and a tail lamp violation.[1]

¶ 9    Before trial, defense counsel moved to suppress the statements Regnier made to Officer Penny, arguing that the statements were the product of a custodial interrogation and were involuntary. The court denied the motion. Though the court

---

[1] The prosecution also charged Armstrong with drug related crimes, but she pleaded guilty to a misdemeanor and was sentenced to probation.

agreed that Regnier was in custody, it found his statements spontaneous and voluntary.[2]

¶ 10    At trial, Regnier didn't testify.  His counsel defended on the theory that the drugs belonged to Armstrong, and that he "took the fall" to protect her.  The jury found Regnier guilty on all counts. The trial court sentenced Regnier to ten years in prison.

## II.    Motion to Suppress

¶ 11    Regnier contends that the trial court reversibly erred by denying his motion to suppress his statements to Officer Penny.  He specifically argues that the statements should've been suppressed because they were the product of a custodial interrogation in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and were involuntary.

### A.    Legal Principles and Standard of Review

¶ 12    To protect the Fifth Amendment privilege against self-incrimination, officers must provide certain warnings before they interrogate someone who is in custody.  *Miranda*, 384 U.S. at 444;

---

[2] In its ruling, the court referred to Regnier as being "Mirandized" while being driven to jail.  But from our review of the body camera video, it doesn't appear that Regnier was advised of his rights before speaking with Officer Penny.

*see People v. Eugene*, 2024 CO 59, ¶ 14.  If they do not, any resulting statements are inadmissible.  *Effland v. People*, 240 P.3d 868, 873 (Colo. 2010).

¶ 13   Police interrogation includes express questioning as well as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."  *People v. Cisneros*, 2014 COA 49, ¶ 72 (citation omitted); *see Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).  To determine if a suspect was interrogated, we consider the totality of the circumstances.  *People v. Gonzales*, 987 P.2d 239, 241 (Colo. 1999).

¶ 14   We review a trial court's suppression order as a mixed question of fact and law, meaning we defer to the court's factual findings if supported by the record but review its legal conclusions de novo.  *People v. Barnett*, 2024 CO 73, ¶ 13.  When, as here, the statements sought to be suppressed are recorded, we independently review the recording.  *See id.*

¶ 15   If a statement obtained in violation of *Miranda* is admitted over a defendant's objection, reversal is required unless the error was

harmless beyond a reasonable doubt, which means there is no reasonable possibility that the error contributed to the conviction. *See People v. Frye*, 2014 COA 141, ¶ 6 (citation omitted). To consider whether the error was constitutionally harmless, we examine, among other factors, the cumulative nature of the statements. *Id.* at ¶¶ 15-16.

### B. Regnier was Subjected to Custodial Interrogation

¶ 16 The parties do not dispute that Regnier was in custody and had not been read his *Miranda* rights when Officer Penny approached him. The dispute instead centers on the trial court's finding that Regnier's statements to Officer Penny were spontaneous. Regnier maintains that Officer Penny interrogated him and that his statements claiming ownership over anything in the truck — which included drugs, cash, and the lockbox — were inadmissible.

¶ 17 We conclude that under the totality of the circumstances, Officer Penny interrogated Regnier. That's because when Officer Penny first asked Regnier if he wanted "to talk to [him] about anything in the truck," Officer Penny had already discovered drugs in the truck, knew that Regnier was aware and upset that

7

Armstrong had been arrested for the drugs, and understood that Regnier had told Officer Klassen that everything in the truck was his. Thus, Officer Penny's initial question asking Regnier if he wanted to talk specifically about anything in the truck was not a general informational question. Rather, it was a question *reasonably likely* to elicit an incriminating response. *Cisneros*, ¶ 72. Even beyond that, Officer Penny followed up with express questioning about who owned the drug paraphernalia, cash, and lockbox found in the truck. Again, these questions were reasonably likely to elicit incriminating responses. *People v. Beaver*, 725 P.2d 96, 99 (Colo. App. 1986) (noting that an incriminating response is "any response that the prosecution may seek to introduce at trial").

¶ 18    We are not otherwise persuaded by the People's suggestion that Regnier's responses were "spontaneous" simply because Officer Penny interspersed his interrogative questions with other innocuous ones. Unlike Regnier's unprompted and volunteered statements to Officer Klassen, his statements to Officer Penny were prompted by questions likely to elicit incriminating responses. *Cf. People v. Madrid*, 179 P.3d 1010, 1015 (Colo. 2008) (finding no interrogation when officer asked no questions and the defendant's

statements were "spontaneous interruptions, rather than responses to express questioning or its equivalent").

¶ 19     But the fact that Regnier volunteered nearly identical statements to Officer Klassen demonstrates why admitting his statements to Officer Penny was harmless beyond a reasonable doubt. Officer Klassen testified at trial that Regnier admitted that anything in the truck was his and that Armstrong didn't "mess with that type of stuff." And the jury saw Regnier's spontaneous admissions to Officer Klassen on the bodycam video. Because the cumulative statements to Officer Penny added nothing, the error in admitting them "could not have contributed to the jury's verdict." *People v. Stone*, 2021 COA 104, ¶ 32; *see also People v. Davis*, 2018 COA 113, ¶¶ 22-23 (concluding that any error in admitting the defendant's statements to an officer in violation of the Fifth Amendment was harmless beyond a reasonable doubt because overlapping admissible statements were made to another officer).

¶ 20     While we conclude that the trial court erred by finding Regnier's statements to Officer Penny "spontaneous," because the statements were cumulative to properly admitted evidence, the error was constitutionally harmless.

9

## C. Regnier's Statements Were Voluntary

¶ 21 Regnier next argues that irrespective of whether he was subject to custodial interrogation, his statements to Officer Penny were coerced and therefore the court erred by admitting them. We disagree.

¶ 22 A defendant's statements must be voluntary to be admitted into evidence. U.S. Const. amends. V, XIV; Colo. Const. art. II, § 25; *see Effland*, 240 P.3d at 877. A statement is involuntary if (1) the defendant's will was overborne by coercive police conduct and (2) that coercion played a significant role in inducing the statement. *People v. Cerda*, 2024 CO 49, ¶ 37.

¶ 23 To assess voluntariness, we consider the totality of the circumstances, including:

- whether the defendant was in custody;

- whether the defendant was free to leave;

- whether the defendant was aware of the situation;

- whether the police read *Miranda* rights to the defendant;

- whether the defendant understood and waived their *Miranda* rights;

10

- whether the defendant had an opportunity to confer with counsel or anyone else before or during the interrogation;

- whether the defendant made a statement during the interrogation or volunteered it later;

- whether the police threatened or promised anything, either directly or impliedly, to the defendant;

- the method or style of the interrogation;

- the defendant's mental and physical condition just before the interrogation;

- the interrogation's length; and

- the interrogation's location and physical conditions.

*Id.* at ¶ 38.

¶ 24 While we review a court's suppression order as a mixed question of fact and law, *see id.* at ¶ 22, the ultimate determination of whether a statement is voluntary is a legal question we review de novo. *Effland*, 240 P.3d at 878.

¶ 25 After viewing the bodycam video, we conclude that Regnier's statements to Officer Penny were voluntary. Though he was in custody and the officers didn't read him his *Miranda* rights, Regnier was aware that the police had found drugs in the truck. Knowing

11

that, and before Officer Penny questioned him about what was in the truck, Regnier blurted out to Officer Klassen that everything in the truck was his. When Officer Penny followed up with Regnier, he made no threats or promises and was calm and polite. Nothing about the questioning was threatening, aggressive, or intimidating. Regnier himself was composed and displayed no signs of physical or mental distress. And the interaction at issue lasted less than three minutes. *See People v. Mumford*, 275 P.3d 667, 671 (Colo. App. 2010), *aff'd*, 2012 CO 2.

¶ 26    Because the totality of the circumstances shows no coercive police conduct, we conclude that the trial court didn't err by finding Regnier's statements voluntary.

### III.    Armstrong's Statements

¶ 27    At trial, defense counsel sought to question Officer Penny about Armstrong's statements that the items the officers found in the truck belonged to Regnier. The trial court allowed some of the testimony but excluded additional testimony about Armstrong's statements, finding that it was inadmissible hearsay. Regnier contends that this was reversible error.

12

¶ 28    We review a trial court's evidentiary ruling for an abuse of discretion. *Zapata v. People*, 2018 CO 82, ¶ 25.  We review preserved claims of evidentiary error under the harmless error standard and will reverse only if the error substantially influenced the verdict or affected the trial's fairness.  *See* Crim. P. 52(a); *see Hagos v. People*, 2012 CO 63, ¶ 12.

¶ 29    Though the parties argue at some length about the admissibility of Armstrong's statements to Officer Penny, we don't need to determine whether the statements were admissible because any error in failing to admit them was harmless.  That's because Armstrong's statements to Officer Penny were admitted through other evidence.  *See People v. Pack*, 797 P.2d 774, 776 (Colo. App. 1990) (concluding that the exclusion of a cumulative statement is harmless).  Indeed, the prosecution introduced Officer Penny's bodycam video which included most of Armstrong's statements to Officer Penny while she was being arrested.  And, most critically, Armstrong testified at trial about her statements to Officer Penny and admitted that she had told him that the drugs and paraphernalia found in the truck belonged to Regnier, not her.

¶ 30    Though Regnier says the excluded evidence "was highly relevant to his defense," he fails to acknowledge that the excluded testimony was cumulative to other admitted evidence and doesn't explain how excluding cumulative testimony substantially influenced the verdict or affected the trial's fairness. Because Officer Penny's testimony about Armstrong's statements was cumulative to other admitted evidence, any error in excluding it was harmless. *See id.*

## IV.  Disposition

¶ 31    The judgment of conviction is affirmed.

JUDGE MOULTRIE and JUDGE HAWTHORNE concur.